S96A0356. DINNING v. THE STATE.
(470 SE2d 431)

HUNSTEIN, Justice.

Jack Douglas Dinning was found guilty of two counts of murder in the shooting deaths of Eric Rider and his mother, Dorothy Rider, two counts of armed robbery involving the Riders, and one count of burglary, as to the Riders' home. He was sentenced to four consecutive life sentences for the murders and armed robberies and twenty years to run concurrent on the burglary. He appeals the denial of his motion for a new trial.[1] Because the State's failure to disclose evidence of agreements of immunity it had made with material witnesses violated *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972) and constituted harmful error in this case, we reverse.

1. The jury was authorized from the evidence adduced at trial to make the following findings of fact: Eric Rider, who was confined to a wheelchair, lived with his 91-year-old mother at a remote residence near Lake Rabun. Mr. Rider kept at his home items such as rare gold and silver coins, numerous firearms, and stacks of old, mostly uncirculated fifty dollar bills (many of which were 1934 fifty dollar gold certificates), which Mr. Rider banded together in amounts of $1,000 per stack. Witnesses testified they spoke with Mr. Rider on January 21, 1989 but could not contact him thereafter, even for scheduled deliveries. On February 15, 1989, the Riders' bodies were found inside the residence, which had been thoroughly ransacked. Investigation revealed that coins, bills, and weapons were missing from the home. Expert testimony established that both victims had been killed by multiple gunshots to the head with a .22 caliber firearm and that the bullets could have been fired from a High Standard .22 caliber pistol.

At the time of the Riders' murders, Dinning had $2.34 in his checking account, less than $250 in two savings accounts, and was earning between $5 and $5.25 an hour at his handyman job. On Janu-

---

[1] The crimes were committed on or about January 21, 1989; the victims' bodies were discovered February 15, 1989. Dinning was indicted on May 21, 1992 in Rabun County. He was found guilty on May 13, 1993 and was sentenced the same day. His motion for new trial, filed on June 4, 1993 and amended on February 17, 1995, was denied on September 15, 1995. A notice of appeal was filed on October 10, 1995. The appeal was docketed in this Court on November 28, 1995 and was orally argued on February 19, 1996.

ary 22, 1989, the day after the murders likely occurred, Dinning telephoned Dennis Coton in Tampa, Florida and asked for Coton's help in purchasing a pound of marijuana, which Dinning estimated would cost $1,600. Dinning went to Florida on January 24 or 25 where he gave Coton several weapons including a High Standard .22 caliber pistol and a 1922 silver dollar. Dinning also purchased one pound of marijuana from Charles Piccirillo and Fred Venable for which he paid $1,500 in neatly stacked fifty dollar bills, some of which were 1934 fifty dollar gold certificates which looked like they had never been in circulation. Dinning made two other purchases of marijuana from Piccirillo and Venable, one for five pounds in February and another for ten pounds in April, paying the $7,500 and $15,000 purchase prices with stacks of $50's banded in $1,000 amounts. In May and July 1989, Dinning sold rare gold and silver coins which had belonged to Mr. Rider, telling the purchaser the coins belonged to his wife. Dinning also sold several guns identified as belonging to Mr. Rider to various individuals in late 1990.

Police learned of the existence of one of the guns in early 1991 and traced the weapon back to Dinning, who, in three conversations in March 1991, told police he had purchased the weapon at a flea market. Police investigation subsequently revealed the coin sales and marijuana purchases. Dinning was arrested on May 19, 1992. Dinning's father, upon learning of his son's arrest, telephoned Coton, retrieved the High Standard .22 caliber pistol Dinning had given Coton, and discussed with Coton his plan to dispose of the weapon by throwing it off the Howard Franklin Bridge in Tampa. Witnesses from the Florida Department of Transportation identified a High Standard .22 caliber pistol recovered from the emergency lane on the Howard Franklin Bridge in Tampa on May 28, 1992. That weapon was identified as belonging to Mr. Rider.

When arrested in May 1992, the statement Dinning gave police was consistent with his testimony at trial: that Mr. Rider had given Dinning money and guns as payment for buying other guns for Mr. Rider and that Mr. Rider had given Dinning the coins to use for a gun sale but when that deal fell through Mr. Rider told Dinning to hold the coins until the next sale (which never occurred). Dinning testified that he went to Tampa and purchased one ounce of marijuana in January and one pound in February 1989, paying with money he had received from various jobs as well as from Mr. Rider for his gun-running activities.

We find the evidence adduced at trial sufficient to enable a rational trier of fact to find Dinning guilty of the charged crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The record supports the trial court's finding[2] that Georgia law enforcement officers promised immunity against prosecution for drug-related charges to Coton, Piccirillo, and Venable, the three Florida witnesses involved in Dinning's marijuana purchases. The record also supports the trial court's finding that under the unique facts in this case, the officers who investigated the murders must be considered a part of the prosecution team so as to render the district attorney responsible for the promises made by members of the prosecution team to these witnesses. *Zant v. Moon*, 264 Ga. 93, 100 (440 SE2d 657) (1994). Accordingly, we agree with the trial court that the State's failure to provide Dinning with information concerning promises made regarding prosecutions against the three Florida witnesses violated *Giglio v. United States*, supra.

The trial court correctly recognized that a *Giglio* violation does not automatically result in a new trial. See *Owen v. State*, 265 Ga. 67, 69 (2) (453 SE2d 728) (1995). The trial court rejected Dinning's argument that because the *Giglio* violation was intentional, the evidence at trial should be reviewed under a standard of review of whether the undisclosed information could have affected the outcome, *United States v. Alzate*, 47 F3d 1103, 1110 (11th Cir. 1995), and instead found that the information was withheld as a result of negligence. Applying the "reasonable probability" standard of review, *Owen v. State*, supra at 70 (2), the trial court then concluded that even had the evidence been disclosed to the defense, the result of the proceeding would not have been different. Id. It is not necessary to address Dinning's argument that the trial court applied an incorrect standard of review because we find that, even under the standard of review used by the trial court, reversal is required.

The trial court's ruling that there was no reasonable probability the proceedings would have been different is based on its conclusions that the three Florida witnesses were not key prosecution witnesses (in that the subject matter of their testimony was corroborated by Dinning and the other evidence adduced by the State was sufficient to support the jury's verdict) and that the impeachment evidence showing bias or interest was marginal (in that the offers of immunity were not compelling and the witnesses were not implicated in the crimes for which Dinning was charged). We disagree with both conclusions.

Coton, Piccirillo, and Venable were clearly key prosecution witnesses. Their testimonies were crucial in that they established that within days of the murder Dinning possessed large amounts of Mr. Rider's money, as well as his coins and guns. No other evidence estab-

---

[2] Evidence was adduced during the hearing on Dinning's motion for a new trial and the trial court's findings are set forth in its order denying that motion.

lished Dinning's possession of large amounts of the stacked and banded fifty dollar gold certificates. Dinning's testimony cannot be considered as corroboration of these witnesses' testimonies, given the conflicts over such significant matters as the number of purchases, the amount of marijuana purchased, and the money used for the payments. As to the other evidence adduced by the State, that evidence consisted of Dinning's sales of coins and guns that occurred at least four months, but most over a year, after the crimes. This evidence lacks the immediacy of the transactions testified to by the Florida witnesses and does not raise a comparably sharp inconsistency with Dinning's explanation for his possession of the guns and coins.

We also disagree with the trial court's conclusion that the offers of immunity were not "compelling." The videotape of Coton's interview with the police contains a protracted discussion of Coton's immunity under Georgia and Florida law in exchange for his testimony against Dinning. While the offers to Piccirillo and Venable were less specific and detailed than the offer made to Coton, they nevertheless clearly showed that these witnesses knew, in exchange for their testimony, that they would not be at risk of being prosecuted for their involvement in illegal drug deals. These offers were not of "such a marginal benefit . . . that it is doubtful it would motivate a reluctant witness." *McCleskey v. Kemp,* 753 F2d 877, 884 (11th Cir. 1985). See also *Patillo v. State,* 258 Ga. 255, 260 (4) (c) (368 SE2d 493) (1988). Finally, the fact that none of these three witnesses was implicated in the Riders' murders is not the relevant consideration. Rather, "[w]hat counts is whether the witness may be shading his testimony in an effort to please the prosecution. [Cit.]" (Emphasis and punctuation omitted.) *Owens v. State,* 251 Ga. 313, 316 (305 SE2d 102) (1983).

Reversal is required

> "if the [undisclosed] evidence is material in the sense that its suppression undermines confidence in the outcome of the trial," i.e., "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." [Cit.]

*Patillo v. State,* supra at 261. While we recognize that materiality is not established by the "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial," *United States v. Agurs,* 427 U. S. 97, 109-110 (III) (96 SC 2392, 49 LE2d 342) (1976), we conclude from the circumstantial nature of the evidence against Dinning and the critical importance of the testimony of Coton, Piccirillo, and Venable to the State's case against Dinning, that the State's failure to disclose the challenged evidence violated Dinning's due process rights to a funda-

mentally fair trial and has undermined confidence in the outcome of the trial. We therefore hold that the trial court erred by denying Dinning's motion for a new trial.

3. Dinning also contends error in the State's failure to disclose exculpatory and impeachment evidence under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). However, because a new trial is required, see Division 2, supra, any *Brady* violation is moot given the defense's current knowledge of the evidence the State allegedly failed to disclose.

4. Likewise, the reversal of this case renders it unnecessary for this Court to address Dinning's claims involving ineffective assistance of counsel, jury selection, and remarks made by the prosecutor in closing argument.

5. We turn now to those enumerated errors which may arise upon retrial: (i) Contrary to Dinning's contention, we find no error in the trial court's ruling that he was not entitled to a hearing pursuant to Uniform Superior Court Rule 31.3 (B) (evidence of similar transactions) as to the State's evidence regarding the manner in which Dinning used the money taken from the Rider residence. (ii) The record does not support Dinning's contention that the Sheriff of Rabun County personally received reward money from a trust fund set up by Mr. Rider and we find no error in the trial court's conclusion that the receipt of the money by the Rabun County Board of Commissioners raised no sense of impropriety so as to call into question the fairness of the criminal justice system. Compare *Young v. United States*, 481 U. S. 787 (III) (B) (107 SC 2124, 95 LE2d 740) (1987). (iii) We find no error in the trial court's admission of the State's only photo that depicted a full frontal pre-autopsy view of Ms. Rider's body. *Williams v. State*, 265 Ga. 681 (5) (461 SE2d 530) (1995). (iv) The record establishes that probable cause existed for the issuance of a search warrant of Dinning's residence and thus the trial court did not err by denying Dinning's motion to suppress evidence seized during that search. (v) Evidence adduced at the hearing conducted pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964) supports the trial court's rulings that Dinning was not in custody when he made statements to the police in March 1991 and that his post-arrest statement in May 1992 was voluntarily and intelligently made and was not the product of coercion. Therefore, the trial court did not err by denying Dinning's motion to suppress these statements.

6. Dinning failed to raise his final enumerated error in the trial court. Thus, it will not be addressed.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 20, 1996.

*Wolfe & Steel, Brian E. Steel, Michael R. Duponte,* for appellant.

*Michael H. Crawford, District Attorney, Michael J. Bowers, Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.

