S97A0356. DINNING v. THE STATE.
(485 SE2d 464)

HINES, Justice.

Jack Dinning was found guilty on May 13, 1993, of two counts of murder in the shooting deaths of Eric Rider and his mother, Dorothy Rider, two counts of armed robbery involving the Riders, and one count of burglary of the Riders' home. On May 20, 1996, this Court reversed the convictions because the State failed to disclose agreements of immunity with material witnesses in violation of *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972). *Dinning v. State*, 266 Ga. 694, 696 (2) (470 SE2d 431) (1996). However, it was also determined that the evidence at trial was sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to find Dinning guilty of the charged crimes.[1] *Dinning*, supra at 695

---

[1] This Court's earlier decision detailed the facts of the case. Eric Rider, who was confined to a wheelchair, lived with his 91-year-old mother near Lake Rabun. Mr. Rider kept at home rare gold and silver coins, numerous firearms, and stacks of old, mostly uncirculated fifty-dollar bills (many from 1934). On February 15, 1989, the Riders' bodies were found

(1). Dinning filed a plea in bar asserting that the prosecution's misconduct, in failing to disclose the immunity agreements and reveal alleged exculpatory and impeaching evidence, was of such gravity as to give rise to the bar of double jeopardy, thereby erecting a constitutional prohibition against retrial on the charged offenses. The trial court denied the plea, and Dinning appeals. We affirm.

Dinning's convictions were reversed for prosecutorial misconduct, not evidentiary insufficiency. Double jeopardy prohibits the retrial of a criminal defendant when the prosecution fails to produce sufficient evidence to sustain a conviction at the initial trial. *Burks v. United States*, 437 U. S. 1 (98 SC 2141, 57 LE2d 1) (1978); *Williams v. State*, 258 Ga. 305, 310 (1) (369 SE2d 232) (1988); OCGA § 16-1-8 (d) (2). Thus, generally the double jeopardy bar does not impede retrial after a mistrial or reversal on appeal. *Oregon v. Kennedy*, 456 U. S. 667 (102 SC 2083, 72 LE2d 416) (1982); *United States v. Ball*, 163 U. S. 662 (16 SC 1192, 41 LE 300) (1896); *Williams v. State*, supra. However, when a criminal defendant is granted a mistrial or his or her convictions are reversed because the prosecution engages in intentional misconduct purposefully designed to secure an opportunity to retry the case, a retrial will not be permitted. See *Oregon v. Kennedy*, supra; *Williams v. State*, supra at 312; and *State v. D'Auria*, 222 Ga. App. 615, 616 (475 SE2d 678) (1996).

Dinning urges that if the prosecutor's conduct is malicious and

---

inside the residence, which had been thoroughly ransacked. Investigation revealed that coins, paper money, and weapons were missing. It further revealed that both victims had been killed by multiple gunshots, which could have been fired from a High Standard .22 caliber pistol.

At the time of the murders, which likely occurred on January 21, 1989, Dinning had $2.34 in his checking account, less than $250 in two savings accounts, and was earning between $5 and $5.25 an hour at his handyman job. On the day after the murders, Dinning telephoned Dennis Coton in Florida seeking help in buying a pound of marijuana, which Dinning estimated would cost $1,600. After traveling to Florida, Dinning gave Coton several weapons, including a High Standard .22 caliber pistol, and a 1922 silver dollar. He also purchased one pound of marijuana from Charles Piccirillo and Fred Venable, for which he paid $1,500 in fifty-dollar bills, some of which were printed in 1934. Dinning made two other marijuana purchases from Piccirillo and Venable in February and April for $22,500 and paid for these purchases with fifty-dollar bills. In May and July 1989, Dinning sold rare gold and silver coins which had belonged to Mr. Rider, telling the purchaser the coins belonged to his wife. He also sold several guns later identified as belonging to Mr. Rider.

In early 1991, police traced one of the guns back to Dinning, who told them on three separate occasions that he purchased the weapon at a flea market. After further investigation revealed the coin sales and marijuana purchases, Dinning was arrested on May 19, 1992. Upon learning of his son's arrest, Dinning's father telephoned Coton, and discussed disposing of the .22 caliber pistol by throwing it off a certain bridge. The weapon was recovered from the bridge, and was identified as belonging to Mr. Rider.

Dinning stated that Mr. Rider had given him money and guns as payment for buying other guns for Mr. Rider and that Mr. Rider had given him the coins to use for a gun sale, but when that deal fell through Mr. Rider told Dinning to hold the coins until the next sale, which never occurred.

deliberate that, in and of itself, should be sufficient to invoke the bar of double jeopardy. What is critical is the objective of the prosecutor's improper conduct. Unless a prosecutor is trying to abort the trial, his or her misconduct will not prohibit a retrial. See *Oregon v. Kennedy*, supra; *Williams v. State*, supra.

> [A]ctions of the prosecutor constituting even intentional prosecutorial misconduct do not raise the bar of double jeopardy, notwithstanding the fact that the defendant was thereby deprived of due process of law, unless the prosecutor's actions were intended to subvert the protections afforded by the Double Jeopardy Clause. [Cits.]

*Williams v. State*, supra at 312. Because the record does not show that the conduct complained of was for the purpose of aborting the trial and securing an opportunity to retry the case, the trial court properly concluded that double jeopardy does not bar Dinning's retrial.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 28, 1997.

*Wolfe & Steel, Brian Steel, Michael R. Duponte,* for appellant.
*Michael H. Crawford, District Attorney, Michael J. Bowers, Attorney General,* for appellee.