A05A1607. BYRD v. THE STATE.
A05A1649. HALL v. THE STATE.
(626 SE2d 598)

ADAMS, Judge.

Jason Lee Byrd, Arthur Wayne Hall, and Jonathan Brooks were indicted on 41 counts of criminal damage to property arising from the ransacking of Floyd County's historic cemetery known as Myrtle Hill. When their trial resulted in a mistrial, Hall and Byrd moved for discharge and acquittal on the ground that the prosecutor engaged in intentional misconduct to cause the mistrial, purposefully designed to secure an opportunity to retry the case. The trial court denied their motion, and Hall and Byrd appeal that decision.[1]

Prosecutorial misconduct will bar retrial of a case if the defendant can show "that the State was purposefully attempting through its prosecutorial misconduct to secure an opportunity to retry the

---

[1] We remind the bar that the Rules of the Court of Appeals require that record and transcript citations must be to the volume or part of the record or transcript and the page numbers that appear on the appellate records or transcript as sent from the court below. See Rule 25. This means that parties should not cite to the page number of a document, such as a deposition or affidavit, included in the record but rather to the record page number.

case, to avoid reversal of the conviction because of prosecutorial or judicial error, or to otherwise obtain a more favorable chance for a guilty verdict on retrial. [Cit.]" *Davis v. State*, 278 Ga. 305, 306 (1) (602 SE2d 563) (2004). "Whether the prosecutor intended to goad the defendant into moving for mistrial called for the trial court to 'make a finding of fact (by i)nferring the existence or nonexistence of intent from objective facts and circumstances.'" Id., quoting *Oregon v. Kennedy*, 456 U. S. 667, 675 (102 SC 2083, 72 LE2d 416) (1982). The trial court's decision on this issue will stand unless clearly erroneous:

> When the trial court sits as the factfinder, its resolution of factual issues will be upheld by the appellate court unless it is clearly erroneous. [Cits.] A trial court's findings of fact will not be deemed to be clearly erroneous if there is any evidence to support them, and this holds true even if the findings are based upon circumstantial evidence and the reasonable inferences which flow from them. [Cit.]

*State v. Thomas*, 275 Ga. 167, 168 (562 SE2d 501) (2002).

The facts are somewhat complicated. But Hall and Byrd essentially argue that the State, realizing it had a very weak case, initially decided to use questionable tactics and inadmissible evidence to obtain a conviction. Then, after the defendants destroyed the State's key witness's credibility on cross-examination, the State attempted to procure a mistrial rather than a conviction.

More specifically, Hall and Byrd contend that the State, intentionally and improperly, partially withheld a damaging police statement by Billy Bunch, its key witness, until after Bunch began to testify, and intentionally introduced hearsay and improper character evidence against them; one item of which resulted in defense motions for mistrial. Although the trial court denied the motions, the court ordered a somewhat unorthodox remedy to mitigate the damage done, to which the State did not object.[2] Defense counsel then seriously impeached Bunch on cross-examination.

---

[2] The prosecutor asked Bunch, "What did [you and Brooks] talk about?" Bunch replied, "They wouldn't talk about straight-up stuff like doing this job or doing that job or whatever. They wouldn't ever be specific." Hall's attorney objected and moved for a mistrial (in which the others joined) on the grounds that the testimony could mean that the defendants were engaged in other crimes. The court overruled the motions and told the State that it was "going to have to make it sound like we're talking about a legitimate job – work – that's the only way this can be solved. And we probably just need to send the jury out and tell him that straight-up that we're going to have to do a little misleading here." The court then sent the jury out and explained to Bunch that he could not bring the defendants' character into issue. The court continued with Bunch,

> Now you're going to fix this. Ms. Wetherington is going to stand up in just a minute and we're going to have to fix it or else we're going to have to start over . . . and the

Hall and Byrd correctly point out that after Bunch's cross-examination the State changed its position and asked for a mistrial based on the court's earlier unorthodox remedy for the improper character evidence. When that motion was denied, the State, according to Hall and Byrd, then intentionally elicited the fact that Hall had been on probation at some point — which resulted in a mistrial for Hall — and then, after the trial resumed, intentionally implicated Byrd and Brooks in unrelated criminal activity — which resulted in a mistrial for them. In addition, the State's explanations for its actions were inconsistent and possibly reveal a lack of candor with the court. Hall and Byrd argue these facts show that the State intentionally goaded the defendants into seeking a mistrial so that the State could retry the case another time, and that, therefore, the trial court erred by denying their motions for discharge and acquittal.

Following a post-trial evidentiary hearing on the motions for discharge and acquittal, the trial court found that prior to the mistrials the prosecutor seemed to be repeatedly calling for hearsay and inadmissible answers in the way she was questioning Bunch. After reviewing the specifics, the court concluded that the prosecutor engaged in a sequence of overreaching or error prior to the two events that led to mistrials. The court also noted that Bunch's cross-examination was "very effective" and that as a result the State's case "was not going very well." Accordingly, the State's chances of success appeared grim, and "[a] mistrial would have benefited the State as it would have afforded the State an opportunity to fine tune its case."

In addition, with regard to Hall's mistrial, the court found that the prosecutor's question and Bunch's answer that revealed Hall's probation were "very similar to the question and answer in [Bunch's] police interview," suggesting that the prosecutor intentionally elicited the information at trial. But ultimately, the court found that the prosecutor did not intentionally solicit the information about Hall's probation. The court noted that the prosecutor was surprised by the testimony and tried to interrupt the witness as soon as the word "probation" came out. Furthermore the court resolved an issue of fact

---

way you're gonna fix it is you're talking about work. I'm sure these gentlemen do some work, don't they? (to which Bunch agreed). . . . That's the kind of work we're talking about. . . . Now I know that you took an oath and I'm going to give you a little bit of a reprieve on the perjury part of it because we're not going to put the character of these defendants in issue and have all this to go over again because you want to say more than you're supposed to.

The defendants then renewed their motions, and the court overruled them. After the jury returned the prosecutor asked, "So Mr. Bunch, you and the three defendants had conversations together at your place about the things that were going on, work that you all were doing, and things like that?" Bunch replied, "Yes, ma'am." No party contends that any perjury occurred.

to find that the prosecutor did not remember the precise question and answer in the police interview.

With regard to Byrd, the trial court found that the prosecutor intentionally introduced evidence of a prior similar transaction without proper notice in an effort to gain tactical advantage. But the court found that the prosecutor's tactic was not designed to secure a mistrial. The court found that the prosecutor attempted to resist the motion for mistrial and that she was "possibly caught up in the heat of the trial and the pressure of the case." Finally, the court based its decision in part on the court's own knowledge of the prosecutor's reputation.

There is some evidence in the record to support the trial court's decisions. First, with regard to Hall, the prosecutor did attempt to interrupt Bunch when he said the word "probation," and she argued that a mistrial was not required under the circumstances. We also note that the question and answer regarding probation in the police interview and the related question and answer at trial have a key difference. At trial, the prosecutor asked an either/or rather than an open-ended question, thereby apparently attempting to limit the witness's options to answer. However, the witness gave his same police-transcript, nonresponsive answer. Moreover, the transcript of the prosecutor's own interview with Bunch contains no mention of probation, and the prosecutor was not using the police interview to question Bunch. And even defense counsel acknowledged that Bunch was an out-of-control witness. With regard to Byrd, the record shows that the defense did not object to earlier indirect testimony about the similar transaction, which may have encouraged the prosecutor to pursue it further. And that testimony occurred before Bunch's cross-examination. This undermines Hall's and Byrd's theory that the State decided to seek a mistrial after that cross-examination.

Also, the prosecutor stated at trial and testified at the motion hearing that she did not intend to cause a mistrial and that she thought she was offering the information for a legitimate purpose of rehabilitating her own witness.[3] Finally, although not determinative, the court was authorized to consider its own knowledge of the prosecutor's reputation for ethical behavior. See *State v. Thomas*, 275 Ga. at 168 (the trial court's personal knowledge of the prosecutor's integrity is relevant but not controlling). Because there is some evidence to support it, we find no clear error in the trial court's decision to deny Hall and Byrd's motions for discharge and acquittal.

---

[3] Byrd contends the trial court erred by not ruling that the prosecutor's asserted reason for offering the improper similar transaction evidence was invalid. But this enumeration misses the point. As shown herein, the only relevant question is the intent of the prosecutor to goad the defendants into a mistrial.

The case law supports our decision. Error alone — even intentional — caused by the prosecution is insufficient. The only relevant intent is the intent to cause a mistrial. See, e.g., *Lackes v. State*, 274 Ga. 297, 300-301 (3) (553 SE2d 582) (2001) (prosecutor's incorrect belief that prejudicial evidence would be admissible is insufficient without more to establish intent to provoke a mistrial); *Williams v. State*, 268 Ga. 488 (491 SE2d 377) (1997) (connecting defendant with an irrelevant "theft ring" insufficient without more to establish intent to provoke a mistrial); *Dinning v. State*, 267 Ga. 879, 880-881 (485 SE2d 464) (1997) (even intentional prosecutorial misconduct is insufficient without intent to subvert bar of double jeopardy); *Steward v. State*, 251 Ga. App. 657, 658 (555 SE2d 33) (2001) (inadequately preparing witness insufficient without more to establish intent to provoke a mistrial). Compare *State v. Thomas*, 275 Ga. 167 (double jeopardy attached where based on objective facts, trial court found that prosecutor intentionally provoked a mistrial).

Hall and Byrd contend that further evidence to support their appeal can be found in the prosecutor's failure to promptly provide a complete transcript of Bunch's police interview. Although the trial court did not focus on this issue in its order, we note the prosecutor testified that before trial she was not "independently aware" that the police interview had been tape-recorded and that when she finally listened to it she apparently mistakenly only listened to one side of a two-sided tape. Furthermore, she testified the tape was not located in either her file or the police file for the case on trial, but rather in a separate file covering a different matter. Arguably these failings explain the delay in producing a complete transcript. Also the court ruled prior to trial that the State had complied with the discovery statute, and that ruling has not been appealed. Thus, the State's handling of the transcript does not alter our decision.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED JANUARY 27, 2006.

*James C. Wyatt*, for appellant (case no. A05A1607).
*H. Harold Chambers, Jr.*, for appellant (case no. A05A1649).
*Leigh E. Patterson, District Attorney, Kay A. Wetherington, Natalee L. Staats, Assistant District Attorneys*, for appellee.