A06A0155. THE STATE v. BROWN.
(630 SE2d 62)

JOHNSON, Presiding Judge.

In this case, the state contends the trial court erred by granting Kwame Hasani Brown's motion for discharge and acquittal based on double jeopardy. While not specifying its reasons for granting Brown's plea in bar, the trial court must have found that the state engaged in intentional misconduct at Brown's first trial. We will assume without deciding that the state engaged in intentional misconduct in this case. However, because there is simply no evidence in the record that the state acted with a specific intent to subvert Brown's double jeopardy rights by goading or provoking Brown into moving for a

mistrial, the trial court erred in granting Brown's motion for discharge.[1] Accordingly, Brown's retrial is not prohibited, and we reverse the grant of Brown's motion for discharge and acquittal.

The record shows that part of Brown's defense strategy was to argue that the police repeatedly harassed him prior to his 2003 arrest for the present charges of driving under the influence, failing to maintain lane, and having an open container of alcohol. Joseph Jones testified that he and Brown were stopped three times within a two-week period during the summer of 2003, but none of the incidents culminated in a citation or arrest. Reverend John Williams also testified regarding Brown's recent stops by the police. According to Williams, he recalled Brown being pulled over for something involving music, but agreed that the incident probably happened when Brown was still considered a minor. He further testified, "I'm thinking there was some that had been some years, but there was just a cluster around this time." Officer Eckoff also testified about Brown's recent contacts with the police.

Near the end of the trial's third day, after the defense had rested its case without having called Brown to testify, the state called a series of rebuttal witnesses to the stand. One such witness was Mike Reynolds, the assistant administrator at the Glynn County Police Department. During direct examination, the solicitor-general asked Reynolds about Brown's encounters with police. Specifically, the solicitor-general asked Reynolds about any computer searches he performed on both the vehicle and on Reynolds. The solicitor-general then asked, "Okay. And what did your search determine?" Reynolds responded: "The search determined that on the involvements report the — Mr. Brown had several involvements with the police department." The solicitor-general then asked, "Okay. Did it give dates?" Reynolds responded: "We have a person involved incident on September 8, 2001. A citation issued by the Brunswick Police Department for a noise violation —." At this point, Brown's attorney objected and moved for a mistrial on the ground that the testimony injected improper character evidence.

The trial judge dismissed the jury, played back Reynolds' testimony three separate times, heard argument from Brown's counsel and the solicitor-general, then took a recess. After reconvening, the trial judge reviewed the law with Brown's attorney and the solicitor-general. Both sides argued, and the trial judge took short recesses to look up cases raised by the attorneys. Subsequently, the trial judge denied Brown's motion for mistrial on the ground that it placed

---

[1] See *State v. D'Auria*, 229 Ga. App. 34, 36 (492 SE2d 918) (1997), rev'd on other grounds, *D'Auria v. State*, 270 Ga. 499 (512 SE2d 266) (1999).

Brown's character in evidence. However, the trial judge "out of an abundance of caution and . . . in order to bend over backwards to ensure that these proceedings are fair for both sides and out of the interest of justice and in order to preclude any appearance of an impingement on Defendant Brown's right to remain silent" nevertheless granted a mistrial. Subsequently, Brown filed a motion for discharge and acquittal based on the state's actions at trial, which the trial court granted. The state appeals this order.

Whether to grant a motion for mistrial lies within the sound discretion of the trial judge.[2]

> A trial court has acted within its sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though in a strict, literal sense, the mistrial is not necessary. This great deference means that the availability of another alternative does not without more render a mistrial order an abuse of sound discretion.[3]

An appellate court accepts the trial court's findings on disputed facts unless they are clearly erroneous, but independently applies the law to the facts.[4] We find that "under the totality of the attendant circumstances" in this case, reasonable judges could differ as to the type of disposition required to protect Brown's fair trial rights.[5] The trial court acted within its sound discretion in granting the mistrial in this case.

The question then becomes whether the state's actions were intended to subvert the protections afforded by the Double Jeopardy Clause so as to prevent a retrial by the state. The test is not whether the state's intentional conduct is so egregious and prejudicial that it denies the defendant a fair trial.[6] Rather, what is critical is the objective of the solicitor-general's improper conduct. "Unless [the state] is trying to abort the trial, [its] misconduct will not prohibit a retrial."[7] In the context of a granted motion for mistrial, this means the solicitor-general intended to goad or provoke the defendant into moving for a mistrial.[8]

---

[2] See *Pittman v. State*, 274 Ga. 260, 262 (2) (553 SE2d 616) (2001).

[3] (Citation and punctuation omitted.) *Spearman v. State*, 278 Ga. 327, 330 (2) (602 SE2d 568) (2004).

[4] See *State v. Thompson*, 261 Ga. App. 828, 829 (1) (584 SE2d 7) (2003).

[5] See *Spearman*, supra at 329.

[6] *Dinning v. State*, 267 Ga. 879 (485 SE2d 464) (1997); *D'Auria*, supra at 35.

[7] *Dinning*, supra at 881.

[8] *D'Auria*, supra at 36.

In this case, the trial court granted the mistrial "out of an abundance of caution." The trial court specifically noted that it was denying the mistrial on the grounds asserted by the defense: "[T]he Court believes that that evidence [Reynolds' testimony] was admissible as a response to the defense's contention of harassment." Subsequently, and without any reasoning on the record, the trial judge granted Brown's plea in bar based on double jeopardy. However, we can locate no evidence in the record to support any determination by the trial court that the state intended to subvert Brown's double jeopardy rights by goading or provoking Brown into moving for a mistrial. As the trial judge indicated, the record shows that the state was merely attempting to respond to Brown's contention of harassment. Because the record does not show that the conduct complained of was for the purpose of aborting the trial, the trial court improperly concluded that double jeopardy bars Brown's retrial.

*Judgment reversed. Miller and Ellington, JJ., concur.*

DECIDED MARCH 20, 2006 — ▆▆▆▆▆▆▆▆▆
RECONSIDERATION DENIED APRIL 13, 2006 — ▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

*Richard H. Taylor, Solicitor-General,* for appellant.
*Head, Thomas, Webb & Willis, William C. Head,* for appellee.