FINAL COPY
294 Ga. 506

S13A1387. JENKINS v. THE STATE.

HINES, Presiding Justice.

Larry Jenkins appeals the denial of his motion to dismiss the indictment against him and his plea in bar based upon the grounds that his retrial for two murders and related crimes would violate the constitutional prohibition against double jeopardy and the constitutional right to a speedy trial. For the reasons that follow, we affirm.

In September 1995, Jenkins was convicted of the malice murders, kidnappings with bodily injury and armed robbery of two victims, and the theft of $600 in coins. The jury recommended a death sentence for each of the murders, finding nine aggravating circumstances. The trial court sentenced Jenkins to death, Jenkins appealed, and this Court affirmed. See *Jenkins v. State*, 269 Ga. 282 (498 SE2d 502) (1998). Jenkins filed a petition for a writ of habeas corpus on March 4, 1999, and after evidentiary hearings in December 2002 and January 2003, the habeas court vacated Jenkins' death sentences and

convictions, finding that Jenkins was 17 years old at the time of the crimes and that the Supreme Court of the United States had declared death sentences for crimes committed by persons under the age of 18 to be unconstitutional. See *Roper v. Simmons*, 543 U. S. 551, 568 (125 SCt 1183, 161 LE2d 1) (2005). The habeas court further found that Jenkins' trial counsel rendered ineffective assistance in the guilt/innocence phase of Jenkins' trial, that Jenkins's trial counsel had a conflict of interest, and that there was prosecutorial misconduct in that the State, inter alia, suppressed evidence of the involvement of an unindicted suspect, evidence related to the mental state of a key prosecution witness, and contradictory prior statements of testifying prosecution witnesses. The Warden appealed, and this Court affirmed the judgment of the habeas court, ordering a new trial based upon the habeas court's determination that Jenkins's counsel rendered ineffective assistance in the guilt/innocence phase of the trial.[1] See *Terry v. Jenkins*, 280 Ga. 341 (627 SE2d 7) (2006).

---

[1] As noted, the habeas court determined that Jenkins was 17 when the crimes were committed; therefore, it vacated Jenkins' death sentences in light of *Roper v. Simmons*. The Warden did not appeal the ruling vacating Jenkins' death sentences, and under *Roper*, Jenkins is no longer subject to those sentences.

On June 27, 2011, Jenkins filed a "Motion to Dismiss Indictment and Plea in Bar" seeking to bar his retrial on the grounds, inter alia, that it would violate the "fair trial" and speedy trial guarantees and the prohibitions against double jeopardy under the Federal and State Constitutions. On May 16, 2012, Jenkins filed a "Motion to Bar Retrial Under the State and Federal Double Jeopardy Clauses." It was denied on October 22, 2012. On November 14, 2012, he filed a "Plea in Bar Based Upon Violations of the Defendant's Constitutional Right to a Speedy Trial." By consent of Jenkins and the State, on that same date the trial court entered an order vacating the October 22, 2012 denial order on the basis that the court would enter a consolidated order on the motion to dismiss indictment and the pleas in bar following a scheduled hearing in the matter. On January 28, 2013, the trial court denied the pending motion and pleas in bar.

1. Jenkins contends that the trial court erred in denying his motions and pleas in bar because his retrial would constitute double jeopardy under the United States and Georgia Constitutions for the reason that the prosecution committed intentional misconduct which violated due process, and thus, denied him his right to a fair trial. He urges this Court to adopt a reading of the Georgia constitutional protections against double jeopardy as that set forth in the caselaw

of other jurisdictions, which have found that prosecutorial misconduct, similar to that alleged in Jenkins's case, warranted discharge.[2] But, Jenkins's argument is unavailing.

This Court is to assess the factual findings of the trial court under the standard of clear error, but this Court is to independently examine the trial court's conclusions of law. See *State v. Caffee*, 291 Ga. 31, 33 (3) (728 SE2d 171) (2012). The legal standard employed by the trial court, and its resulting legal conclusions are not in error. Jenkins complains that the trial court relied on the legal standard set forth in *State v. D'Auria*, 229 Ga. App. 34 (492 SE2d 918) (1997):

> As a general rule, a post-conviction reversal or grant of a motion for new trial which is not based on insufficiency of the evidence does not preclude retrial. [Cit.] There is an exception to this general rule, however: The defendant cannot be retried if the retrial is necessitated by prosecutorial misconduct which was intended to

---

[2] Jenkins relies principally upon the caselaw of Pennsylvania and New Mexico, specifically *Commonwealth v. Smith*, 532 Pa. 177 (615 A 2d 321) (1992) (failing to disclose exculpatory evidence, intentionally suppressing evidence on direct appeal, and attempting to discredit a witness constituted prosecutorial misconduct which violated Pennsylvania Constitutions' double jeopardy clause) and *State v. Breit*, 122 N.M. 655 (930 P 2d 792) (1996) (double jeopardy clause of New Mexico Constitution bars retrial following mistrial based on prosecutorial misconduct when prosecutor knows conduct is improper and prejudicial and either intends to provoke mistrial or acts in willful disregard of the possibility of mistrial, retrial, or reversal; prosecutors' pervasive, incessant, and outrageous misconduct, which had resulted in mistrial, barred re-prosecution).

subvert the protections afforded by the Double Jeopardy Clause. [Cits.]

Id. at 35. (Citations and punctuation omitted.) And, the Double Jeopardy Clauses of both the Federal and State Constitutions

> [protect] criminal defendants from three governmental abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense.

*Williams v. State*, 288 Ga. 7, 8 (2) (700 SE2d 564) (2010). In *D'Auria,* it was noted that some defendants have argued, as Jenkins is now doing, that double jeopardy should preclude a defendant's retrial whenever the prosecutors' intentional misconduct is egregious and prejudicial so that it denies the defendant a fair trial. *State v. D'Auria* at 35. However, for this Court to interpret the double jeopardy bar so expansively would be tantamount to making the constitutional protection a type of exclusionary rule. Id.; *Roscoe v. State*, 286 Ga. 325 (687 SE2d 455) (2009).

Generally, the Double Jeopardy Clauses of both the Federal and State Constitutions do not protect a criminal defendant from being put in jeopardy of life and liberty more than once for the same offense in the case of the grant of

5

a new trial following conviction or when there is a mistrial. *Williams v. State*, 288 Ga. at 8 (2). And, with rare exceptions, even in the situation in which a defendant was deprived of effective assistance of counsel but the evidence was nevertheless sufficient to convict, the proper remedy is not to discharge the defendant but rather to reverse the defendant's conviction and remand the matter for a new trial. *Green v. State*, 291 Ga. 287, 288-289 (1) (728 SE2d 668) (2012). However, double jeopardy does prohibit the retrial of a criminal defendant when the State does not produce sufficient evidence at the initial trial to sustain a conviction. *Dinning v. State*, 267 Ga. 879, 880 (485 SE2d 464) (1997). It also precludes retrial when the defendant is granted a mistrial or a reversal on appeal of his or her conviction in the case of intentional prosecutorial misconduct, which is "purposefully designed to secure an opportunity to retry the case." Id.

This Court has determined that the evidence at Jenkins's initial trial was sufficient to enable a rational trier of fact to find Jenkins guilty of the crimes charged beyond a reasonable doubt. *Jenkins v. State*, 269 Ga. at 284.

As to the issue of the intent of the prosecutorial misconduct found by the habeas court, there is no showing that the State's conduct was aimed at aborting

6

the trial and securing an opportunity to retry the case. *Dinning v. State*, 267 Ga. at 880. In fact, quite the contrary. Jenkins acknowledges in his argument to this Court that "[t]he evidence is clear that the State was not trying to induce a mistrial," but rather was trying to obtain his convictions. Thus, the trial court properly concluded that double jeopardy does not bar Jenkins's retrial.

2. There is likewise no merit to Jenkins's further claim that the trial court erred when it denied his plea alleging that the State had violated his Federal and State Constitutional rights to a speedy trial.

> In examining an alleged denial of the constitutional right to a speedy trial, courts must engage in a balancing test with the following factors being considered: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514 [(92 SCt 2182, 33LE2d 101) (1972)]. The existence of no one factor is either necessary or sufficient to sustain a speedy trial claim, and a trial court's findings of fact and its weighing of disputed facts will be afforded deference on appeal. We review the trial court's ruling for abuse of discretion.

*Higgenbottom v. State*, 290 Ga. 198, 200 (1) (719 SE2d 482) (2011). However, before the *Barker v. Wingo* test is applied, there must be a threshold determination as to whether the interval between the accused's arrest, indictment, formal accusation, or other triggering event and the trial is

7

sufficiently long for it to be "presumptively prejudicial." Id. If that presumption is unwarranted, then the analysis goes no further because the speedy trial claim fails; however, if the delay raises the presumption of prejudice, then the analysis proceeds to the examination of all the *Barker v. Wingo* factors. Id.

(a) *Threshold Inquiry.* In general, a delay of one year in prosecuting a crime is considered to be delay which is presumptively prejudicial. *Brock v. State*, 293 Ga. 156, 158 (2) (a) (743 SE2d 410) (2013). Jenkins urges that because of the intentional prosecutorial misconduct and the lack of conflict-free counsel at trial, the delay should be measured from the date of arrest. However, as the trial court noted, Jenkins did not raise the denial of his right to a speedy trial prior to his first trial, on direct appeal of his convictions, or in his habeas corpus proceeding. The delay in this case, in which no retrial has occurred, is properly calculated from the date of the remittitur from this Court following the affirmance of the judgment of the habeas court, which was April 6, 2006, to the date the superior court denied Jenkins's motions, which was January 28, 2013. See *Phan v. State*, 290 Ga. 588, 593 (1) (a) (723 SE2d 876) (2012). Thus, the relevant amount of time is approximately six years and nine months, and the State agrees that such delay raises the presumption of prejudice.

8

(b) *The Four Barker Factors*

(1) *Length of Delay.* The State concedes that the length of the delay is uncommonly long and should be weighed against it.

(2) *Reasons for the Delay.* This pivotal factor examines whether the defendant or the State bears more responsibility for the delay. *Phan v. State*, 290 Ga. at 593 (1) (b). The trial court assessed this factor in three stages: (a) the period between the filing of Jenkins's habeas corpus petition in 1999 to its disposition in 2006; (b) the period between the return of the case to the trial court in 2006 to "the middle of 2011," at which time Jenkins filed one of the present motions and pleas, indicating that plea negotiations were at an end; and (c) the period between mid-2011 until the disposition of the motions and pleas in 2013.

(i) 1999-2006. The trial court concluded that any delay during this period was attributable to the State because the responsibility for the untimely disposition of court proceedings rests with the courts and delays attributable to the courts are attributable to the State. See *State v. Takyi*, 322 Ga. App. 832, 837 (2) (b) (747 SE2d 24) (2013). And, the State does not offer any evidence in

dispute. However, this interval should not have been included in the trial court's analysis because, as has been noted, the date triggering consideration of the *Barker v. Wingo* factors in this case is April 6, 2006.

(ii) 2006-mid-2011. The record supports the trial court's conclusion that this delay was attributable to both the State and the defense. As noted by the trial court, the unique posture of the case contributed to the delay in completing it; after Jenkins's convictions were vacated, he again became eligible for appointed counsel, and there arose confusion as to whether habeas counsel would continue to represent him or whether the State's indigent defense program would assume responsibility for the case; habeas counsel had multiple scheduling conflicts and made requests for extensions of time; with the elimination of the death penalty for Jenkins, it was represented to the trial court that the case was likely to be resolved by a plea; there were several hearings set to determine how to conclude the case; and because of the peculiar circumstances, the trial court permitted a longer than normal time for plea negotiations.

The State takes issue with attributing any delay to it and cites the

numerous rescheduling requests by defense counsel. However, the trial court plainly recognized the defense's role in the protracted proceedings, but it properly also acknowledged the contributing difficulty of confusion involving Jenkins's indigent defense. See *Phan v. State*, 290 Ga. at 593-595 (1) (b). Thus, the trial court correctly concluded that both the State and the defense shared the responsibility for this period of delay, and the second factor of the *Barker v. Wingo* analysis is neutral for this period of time. Id. at 595 (1) (b).

(iii) Mid-2011-2013. The record also supports the trial court's determination that the extended period of plea negotiations and efforts to determine the future of Jenkins's legal representation ended with the filing of the present defense motions and pleas, which if granted, would bar retrial. Jenkins does not offer evidence to dispute the court's further findings that delay in hearing the motions and pleas was due to the representation by both the State and the defense that the issues to be resolved could be decided on the basis of stipulations made; that the stipulations ultimately submitted by the defense were "argumentative and unworkable," resulting in the court electing not to proceed by stipulation; and that while defense counsel felt the responsibility to file and

11

pursue the motions and pleas, it did not alter the fact that the case would have been brought to trial but for the need to hear and rule on them. Consequently, the court appropriately concluded that the post-remand delay should be weighed against Jenkins, but that inasmuch as it was, inter alia, in the pursuit of legitimate motions and pleas, it was "relatively benign."

In sum, both the State and Jenkins must be held responsible for the reasons for the delay.

(3) *Assertion of the Right to a Speedy Trial.* Jenkins does not dispute the trial court's finding that he first asserted his right to a speedy trial in November 2012. Yet, he urges that this factor should be weighed heavily against the State because he contends he was unable to assert his right to a speedy trial from the time of his indictment in 1993 until January 2011 due to the government's failure to appoint him conflict-free counsel and its decision to withhold exculpatory evidence. However, as the trial court aptly noted, this factor must be considered in light of the changes in the law since Jenkins was indicted in 1993 and its implications for the course of his case.

As noted, Jenkins was indicted in 1993, tried in 1995, granted habeas

relief in 2005, and the judgment of the habeas court was affirmed in 2006. Therefore, he was properly held fully accountable for his failure to demand a speedy trial from the 2006 affirmance of his grant of habeas relief until 2012. During this time, there was no evidence of any conflict of interest of defense counsel or of any government action which would have prevented Jenkins from raising his right to a speedy trial.   Thus, this factor must be weighed heavily against Jenkins.  See *State v. Pickett*, 288 Ga. 674, 677 (2) ( c) (3) (706 SE2d 561) (2011).

(4) *Prejudice to the Defendant.*   This factor should be assessed in light of the interests of defendants which the speedy trial right was designed to protect, that is, to prevent oppressive pretrial incarceration, to minimize the accused's anxiety and concern, and to limit the possibility of impairment of the defense. *State v. Johnson*, 291 Ga. 863, 867 (2) (d) (734 SE2d 12) (2012), citing *Doggett v. United States*, 505 U. S. 647, 654 (III) (A) (112 SCt 2686, 120 LE2d 520) (1992).

The trial court found that while all incarceration is oppressive to some degree and that anyone facing two murder charges presumably suffers some

13

degree of anxiety and concern, there was no showing that anything about Jenkins's confinement was "outside the norm" or any evidence of an extraordinary impact upon him resulting from anxiety and concern. Indeed, Jenkins has made no showing that he has been subjected to substandard conditions in jail, nor has he demonstrated that he has suffered anxiety and concern over and above that which would be expected during incarceration, and experienced by one who was to be tried on the charges of which Jenkins is accused. *State v. Johnson*, 291 Ga. at 867 (2) (d). But regardless, the length of the pretrial delay alone raises the presumption of prejudice. Id.

Jenkins maintains that he has "suffered severe prejudice" as a result of the delay principally because the individual who he claims shot the victims "is currently wanted due to absconding from post-conviction supervision," and may not be apprehended prior to retrial. However, the trial court properly found that the presumption of prejudice has been overcome because, inter alia, assuming that such individual is not found prior to trial, the defense has the ability to present already-obtained evidence claimed to support the individual's involvement, and thus, present its apparent theory that a third party committed

the crimes. Additionally, upon retrial, Jenkins will be able to avail himself of the evidence withheld by the State at his first trial. It should also be noted that in general, the inevitable effects of the passage of time on witnesses' memories and availability of evidence tend to help rather than hinder the accused inasmuch as the State must carry the burden of proving beyond a reasonable doubt each element of its case. *Brock v. State*, 293 Ga. 156, 160 (2) (743 SE2d 410) (2013).

(c) *Balancing the Factors*. This test compels the examining court to consider and weigh all four factors in the context of the particular circumstances of the case at issue. *State v. Porter*, 288 Ga. 524, 533 (2) (d) (705 SE2d 636) (2011). And, plainly the trial court did so in this case; its balancing was reasoned and reasonable. *State v. Buckner*, 292 Ga. 390, 399 (3) (e) (738 SE2d 65) (2013). Simply, there was no abuse of the trial court's discretion in applying the test of *Barker v. Wingo* and ultimately denying Jenkins's motions and pleas to bar his retrial on the basis of the violation of his constitutional right to a speedy trial. Id.

Judgments affirmed. All the Justices concur.

Decided February 24, 2014.

Murder, etc. Wayne Superior Court. Before Judge Scarlett.

<u>Jonathan P. Lockwood</u>, for appellant.

<u>Jacquelyn L. Johnson, District Attorney, Andrew J. Ekonomou, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General</u>, for appellee.