**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS*
*COURT. ALL FILINGS MUST BE SUBMITTED WITHIN*
*THE TIMES SET BY OUR COURT RULES.*

**October 27, 2020**

# In the Court of Appeals of Georgia

A20A1534. WOODY v. THE STATE.

BARNES, Presiding Judge.

Clarence M. Woody challenges the denial of his plea in bar on double jeopardy grounds. For reasons that follow, we affirm.

On June 7, 2018, Woody and his co-defendant were brought to trial on a felony drug charge.[1] The State's first witness was a POST-certified narcotics investigator with a sheriff's office, who was assigned to work as a special agent for a GBI-based drug task force. After direct examination by the State, Woody's counsel cross-examined the witness. Next, as the transcript shows, the trial judge allowed for a break: "Thank you, [Woody's Counsel]. Do

---

[1] The underlying indictment charged that Woody and Christy Dawn Green, individually and as parties concerned in the commission of a crime, committed the offense of trafficking methamphetamine or amphetamine on or about the 8th day of September, 2016, by unlawfully possessing more than 400 grams of a mixture containing methamphetamine.

y'all need a break? Anybody need a bathroom break? All right. Let's take about ten minutes. Just let the bailiff know when you're ready to come back in."

A 20 minute break was taken. At 11:57 a.m., with counsel for the parties back in the courtroom, the trial judge announced, "Well, if y'all are ready to go, I'd like to finish this witness before lunch, if [Co-Defendant's Counsel is] ready to do your cross-examination." The ensuing exchange spiraled into the declaration of a mistrial.

> [CO-DEFENDANT'S COUNSEL]: I'm ready, Your Honor. I think there might be –
> [WOODY'S COUNSEL]: Yeah. We do have one matter we need to take up.
> THE COURT: Okay.
> [WOODY'S COUNSEL]: I would – again, I will admit I have rather somewhat limited information about this. But from what I understand, Mr. – I would – I would move for a mistrial at this point. I move for a mistrial. From what has been reported, there was some contact between [the witness/investigator] and Your Honor, where [the witness/investigator] was advised on his testimony.
> THE COURT: Uh-huh.
> [WOODY'S COUNSEL]: And told about, Don't forget to establish chain of custody, or words to that effect. That's what – that this occurred outside in the hallway. And so I would have to – I feel like I have to bring this to the attention of the Court and move for a mistrial at this time, because there's been inappropriate interjection by the Court, with all due respect, into these proceedings, in advising the [witness/investigator] on testimony.
> THE COURT: With all due respect, you're exactly right. Are you joining the motion?

2

[CO-DEFENDANT'S COUNSEL]: Your Honor, we are – I have the same information that [Woody's counsel] has.

THE COURT: Okay. Motion is granted. . . We are dismissed.

The trial ended at 12:00 p.m.

Several months later, on November 9, 2018, Woody filed the underlying plea in bar, claiming that double jeopardy barred further prosecution on the drug charge. After conducting an evidentiary hearing on March 14, 2019, the trial court entered an order on December 6, 2019 denying Woody's plea.[2]

---

[2] The plea in bar was heard and decided by a different judge. The order denying Woody's plea in bar included these background facts:

> [The witness/investigator] was still subject to cross-examination of the co-defendant's counsel. During the break, [the trial judge] commented to [the witness/investigator] about chain of custody, suggesting that he make sure the State covers that evidentiary issue. As soon as the conversation ended, [the witness/investigator] notified the prosecutor who ultimately decided to inform defense counsel of the conversation.

Such facts are not controverted on appeal. We note, however, that no transcript of the hearing has been included with the appellate record; indeed, Woody's notice of appeal states, "A transcript of the hearing on [his] Plea in Bar on March 14, 2019, will not be filed for inclusion in the record on appeal." See generally *Edwards v. State*, 271 Ga. 3, 4 (2) (514 SE2d 833) (1999) (explaining that an appellate court must presume that the trial court's findings were authorized, where the appellant failed to include a transcript of the hearing).

In his sole claim of error in this direct appeal,[3] Woody contends that the denial of his plea in bar was reversible error. As he summarizes in his brief,

> [T]he trial [judge] . . . engaged in judicial misconduct designed to aid in the prosecution of [Woody] and then quickly acknowledged the misconduct and granted a mistrial. Because the record reflects that this conduct was designed to secure a more favorable prosecution of [Woody] and to goad [him] into moving for a mistrial the State is barred from trying [Woody] again for the same indictment. For this reason, the court should reverse the court-below's Order Denying Defendant's Plea in Bar.

Woody cites *Williams v. State*, 268 Ga. 488 (491 SE2d 377) (1997), wherein the Supreme Court of Georgia espoused,

> The primary purpose of the Double Jeopardy Clause is to prohibit the retrial of a criminal defendant where, at the initial trial, the prosecution failed to introduce sufficient evidence to sustain a conviction. Retrial generally is not prohibited where reversal is due to trial error rather then the sufficiency of the evidence. Where . . .a mistrial is granted at the request of a criminal defendant, retrial is not prohibited on the basis of double jeopardy unless it is established that the State intended to "goad" the defendant into moving for a mistrial in order for the State to avoid a reversal due to prosecutorial or judicial error, or otherwise to obtain a more favorable chance of a guilty verdict on retrial.

---

[3] See generally *Carman v. State*, 304 Ga. 21, 25 (1) (815 SE2d 860) (2018) (determining that the case was "properly before [appellate court] as a direct appeal, because the appeal of a denied plea of double jeopardy is subject to the collateral order doctrine").

(Footnotes omitted.) Id. at 489. The *Williams* Court went on to recite from *United States v. Oseni*, 996 F2d 186 (7th Cir. 1993):

> If after a criminal trial begins the government decides that the case is going badly for it, it cannot dismiss the case and reprosecute the defendant. Nor is it permitted to achieve by indirection what it is not permitted to do directly; and thus it cannot engage in trial misconduct that is intended to and does precipitate a successful motion for mistrial by the defendant. The requirement of intent is critical, and easily misunderstood. The fact that the government blunders at trial and the blunder precipitates a successful motion for a mistrial does not bar a retrial. Yet the blunder will almost always be intentional – the product of a deliberate action, not of a mere slip of the tongue. . . .Unless [the prosecutor] is [intentionally] *trying to abort the trial*, his misconduct will not bar a retrial. It doesn't even matter that he knows he is acting improperly, provided that his aim is to get a conviction. *The only relevant intent is [the] intent to terminate the trial, not [the] intent to prevail at . . . trial by impermissible means*.

(Emphasis supplied.) *Williams*, 268 Ga. at 489-490, quoting *Oseni*, 996 F2d at 187-188.

In this case, Woody posits that "[a] trial judge cannot by his or her own misconduct goad a defendant into moving for a mistrial and the State be free to try a defendant again."[4]

---

[4] Woody cites *Paul v. State*, 266 Ga. App. 126, 128 (596 SE2d 670) (2004) ("In the context of a granted motion for mistrial, governmental misconduct will support a plea in bar based on double jeopardy if the prosecutor *or trial judge* intended to goad the defendant into moving for a mistrial.") (emphasis supplied), and *Oregon v. Kennedy*, 456 U. S. 667, 683, n. 12 (102 SCt 2083, 72 LEd 2d 416) (1982) (Stevens,

5

Woody points out that the trial judge readily conceded that he had advised the witness/investigator on matters relating to the chain of custody. Further, Woody asserts that such advice was designed to secure a more favorable prosecution of him, and that the trial judge knew that such improper communications would likely induce a mistrial (as is evident by the brief colloquy at the end of the trial).

Countering that Woody's plea in bar was properly denied, the State argues that Woody failed to make pertinent showings. The State asserts that Woody failed to show that the *prosecution* played any role in the improper communications, and that actions by the *trial judge* (regardless of whether a mistrial resulted) do not raise the bar of double jeopardy. Another argument advanced by the State is that Woody has made no showing of the requisite intent to abort the trial – whether held by the prosecutor or by the trial judge.

Pretermitting whether a trial judge's improper communications with a witness could either be imputed to the prosecution or constitute an independent basis for barring retrial after the declaration of a mistrial, we agree with the State that Woody has failed to show the "only relevant intent" – the intent to terminate the trial, not the intent for the prosecution to prevail at trial by impermissible means. See *Williams*, 268 Ga. at 188, quoting *Oseni*, 996 F2d at 187-188. In so concluding, we have rejected Woody's claim that three circumstances

J., concurring) ("The exception also encompasses comparable judicial misconduct.")

6

illustrate that the "[trial judge] did not wish for the prosecution to continue to a verdict." Woody cites first that when his counsel raised a "couple of motions in limine," the trial judge became upset and asked, "Why weren't they addressed earlier?"[5] Second, Woody cites that when the trial judge was next apprised that no hearing had been conducted on the State's motion to present evidence of prior bad acts, the trial judge suggested, "If you are going to file that motion, have it here before trial."[6] Woody represents that there were no orders requiring motions in limine to be filed before trial, and that it was standard practice for trial counsel to bring up evidentiary matters in limine at the outset of trials. Third, Woody asserts that the trial judge "sua sponte" declared the break, during which he impermissibly communicated with the witness/investigator.

None of the circumstances, either alone or collectively, demonstrated that the trial judge intended for his communications at issue to bring the trial to an end. Actions constituting even intentional misconduct "do not raise the bar of double jeopardy,

---

[5] The transcript of the pre-trial proceedings reveals that the judge further responded, "This case has been on the docket forever. Why weren't the motions in limine . . . motions are to be filed and heard before the trial. . . . I'll hear them, but I'm just not happy about it. Okay?"

[6] The transcript of the pre-trial proceedings reveals that the judge further responded, "We've got a jury sitting in the jury room ready to go, and now we're hearing motions."

notwithstanding the fact that the defendant was thereby deprived of due process of law, unless the . . . actions were intended to subvert the protections afforded by the Double Jeopardy Clause." *Dinning v. State*, 267 Ga. 879, 881 (485 SE2d 464) (1997) (rejecting argument that where the conduct is malicious and deliberate, that – in and of itself – should be sufficient to invoke the bar of double jeopardy; reiterating that what is critical is the objective of the improper conduct). See *State v. Brown*, 278 Ga. App. 827, 829 (630 SE2d 62) (2006) ("The test is not whether the . . . intentional conduct is so egregious and prejudicial that it denies the defendant a fair trial. Rather, what is critical is the objective of the . . . improper conduct. Unless the state is trying to abort the trial, its misconduct will not prohibit a retrial.") (punctuation and footnotes omitted); see also *Palmer v. State*, 271 Ga. 234, 238 (7) (517 SE2d 502) (1999) ("[E]ven assuming prosecutorial misconduct, a retrial is not barred because there is no evidence that the prosecutor intended to abort the trial in order to secure an opportunity to retry the case.").

"Because the record does not show that the conduct complained of was for the purpose of aborting the trial and securing an opportunity to retry the case, the trial court properly concluded that double jeopardy does not bar [Woody's] retrial." *Dinning*, 267 Ga. at 881; see *Paul v. State*, 266 Ga. App. 126, 129 (596 SE2d 670) (2004) (affirming denial of plea in bar based on double jeopardy grounds, because "although the need for a retrial was arguably a

8

foreseeable consequence of the trial court's actions during the initial trial, no evidence suggests that retrial was an *intended* consequence of the misconduct") (citation and punctuation omitted; emphasis in original); *Ellerbee v. State*, 215 Ga. App. 312, 314-315 (5) (b) (450 SE2d 443) (1994) (upholding denial of appellant's double jeopardy claim, because although the first trial resulted in a mistrial after the trial judge communicated ex parte with a juror during the deliberations period, the appellant made no contention that the trial judge's conduct was intended to provoke him into requesting a mistrial; instead, the appellant conceded that "it was *not* something that was intended to create the result that occurred") (emphasis supplied), overruled in part on other grounds, *Felix v. State*, 271 Ga. 534, 540 (523 SE2d 1) (1999) .

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*