## S11A0948. HIGGENBOTTOM v. THE STATE.
(719 SE2d 482)

HINES, Justice.

Dale Lee Higgenbottom appeals the denial of his motion to dismiss for failure to provide a speedy trial in violation of his rights under the State and Federal Constitutions, as well as the denials of his "plea in bar and motion to dismiss" and "general demurrer," which both asserted that the indictment returned against him is

---

defective because the non-murder crimes charged therein are time-barred. For the reasons that follow, we affirm.

The record reflects the following. On December 20, 1992, Christopher Dewayne Breazeale, a fifteen-day-old infant, died from head injuries. Higgenbottom, who was fifteen years old at the time, had stayed at the home of the victim the evening that the baby's fatal injuries were sustained, and he and the infant's family members and neighbors were interviewed by police. At that time, the police were told that the baby was dropped by the infant's four-year-old sister. Shortly after the infant's death, an autopsy was performed by Dr. Floyd James, who concluded that the death was accidental. In late 1992 and early 1993, the Catoosa County Sheriff's Office, the City of Ringold Police, and the Georgia Department of Family and Children Services (DFACS) conducted an investigation. Higgenbottom was again questioned by police on January 26, 1993. No criminal charges were filed after the investigation. Dr. James died in 2004, and in June 2007, Georgia Bureau of Investigation Chief Medical Examiner, Dr. Kris Sperry, issued a revised opinion on the infant's death, concluding that it should have been ruled a homicide and not an accident. On August 30, 2007, Higgenbottom was arrested for the murder of the baby. He was released on bond on September 7, 2007.

On April 8, 2009, a Catoosa County grand jury returned a seven-count indictment against Higgenbottom stemming from the baby's death: Count 1 — malice murder; Count 2 — felony murder while in the commission of cruelty to children; Count 3 — felony murder while in the commission of aggravated battery by rendering a member of the child's body useless; Count 4 — felony murder while in the commission of aggravated battery by seriously disfiguring the child's skull; Count 5 — cruelty to children in the first degree; Count 6 — aggravated battery by rendering a member of the child's body useless; and Count 7 — aggravated battery by seriously disfiguring the child's skull. Higgenbottom, with the assistance of counsel, entered pleas of not guilty to the charges on April 27, 2009.

Trial was set for the September 2009 term of the Superior Court of Catoosa County, but at the request of Higgenbottom and by agreement of the State, an order was entered on September 9, 2009, continuing trial of the case until the next term of court. On January 22, 2010, Higgenbottom filed the "plea in bar and motion to dismiss" and "general demurrer," alleging the expiration of the statutes of limitation regarding the non-murder counts, and on February 17, 2010, he filed the motion to dismiss the indictment for failure to provide a speedy trial. Following a hearing on March 11, 2010, the superior court denied all three motions on April 12, 2010. Higgenbottom filed a notice of appeal on May 12, 2010, and on January 10, 2011, this Court vacated the judgment of the superior court denying

the motion to dismiss the indictment for violation of the constitutional right to speedy trial on the basis that the superior court's order contained insufficient findings for appellate review, and remanded the case to the superior court for its entry of an order including findings in accordance with *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). *Higgenbottom v. State*, 288 Ga. 429 (704 SE2d 786) (2011). Following remand, on February 17, 2011, the superior court entered an amended order denying the motion to dismiss for failure to provide a speedy trial.

1. Higgenbottom contends that the superior court erred in failing to grant the motion to dismiss for failure to provide a speedy trial. This Court's analysis of the merits of such a contention is governed by well-established law.

> In examining an alleged denial of the constitutional right to a speedy trial, courts must engage in a balancing test with the following factors being considered: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U. S. 514[, supra]. The existence of no one factor is either necessary or sufficient to sustain a speedy trial claim, and a trial court's findings of fact and its weighing of disputed facts will be afforded deference on appeal. We review the trial court's ruling for abuse of discretion.

(Citations and punctuation omitted.) *Fallen v. State*, 289 Ga. 247, 248 (710 SE2d 559) (2011). But, before application of the full four-factor balancing test of *Barker v. Wingo,* a threshold determination must be made as to whether the interval between the accused's arrest, indictment, or other formal accusation and the trial is sufficiently long so as to be characterized as "presumptively prejudicial." If such a presumption is not warranted, the analysis need go no farther because the accused's speedy trial claim fails; if, however, the delay invokes the presumption of prejudice, then the analysis proceeds to the examination of all *Barker v. Wingo* factors. *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008).

A. *Length of the delay*. As for the length of the delay, Higgenbottom asserts that there are three prejudicial delays in his case: the approximately 15-year period between the death of the infant and his arrest; the almost 16 months between his arrest and the return of the indictment; and the 11-month interval between the indictment and the motions hearing.

There are two types of pre-trial delay which may constitute violations of an accused's constitutional rights to a speedy trial.

*Jones v. State*, 284 Ga. 320 (1) (667 SE2d 49) (2008); *Wooten v. State*, 262 Ga. 876, 878 (2) (426 SE2d 852) (1993). The first precedes the accused's arrest or indictment and due process implications under the Fifth and Fourteenth Amendments may be triggered during the investigation stage of a case if the accused is in custody during that period. *Harrison v. State*, 311 Ga. App. 787 (717 SE2d 303) (2011). But, that is not the situation in this case. The second type of delay may occur after arrest or indictment, and potentially triggers Sixth Amendment concerns. Id. In this case, the relevant time period is the 30-month interval between Higgenbottom's arrest and the filing of his motion to dismiss based upon the violation of his speedy trial rights. *Jones v. State*, supra at 323 (2). Citing *Wimberly v. State*, 279 Ga. 65 (608 SE2d 625) (2005), in which this Court observed that there is not a "bright-line" rule for determining whether the subject delay raises a presumption of prejudice to the accused, the superior court found that the time period at issue did "not rise to the level of being presumptively prejudicial"; it noted that the case involved an "old" and once "cold" homicide which had been initially determined to be an accident and was not ruled a criminal homicide until 15 years after the victim's death. Nevertheless, the superior court rightly acknowledged that the 30-month delay might invoke the presumption of prejudice, and proceeded to apply the full *Barker v. Wingo* test. *Ruffin v. State*, supra at 55 (2).

B. *Reasons for the delay*. The superior court expressly found that there was no evidence that the delay was the result of any intentional or deliberate action by the State to hamper the defense; that the initial delay of 24 months between Higgenbottom's arrest and his case being placed on a trial calendar was attributable to the State, but that the delay was "not uncommonly long" given the peculiar circumstances of the case; and that once the case appeared on a trial calendar, Higgenbottom lengthened the delay by seeking and obtaining a continuance. After balancing these reasons for the delay, the superior court weighed this factor slightly against the State.

Higgenbottom urges that the State was required to provide a reason for its contribution to the delay, and that inasmuch as the State did not do so, the delay must be found to be caused by the negligence of the State in bringing the case to trial. It is true that when no reason appears for a delay, it will be treated as caused by the State's negligence. *Boseman v. State*, 263 Ga. 730, 733 (1) (b) (438 SE2d 626) (1994). However, even accepting the premise of the State's failure to explain with specificity its role in the delay so as to result in a finding of negligence, when a delay is caused by the mere negligence of the State, this is relatively benign, and therefore, this

factor should be weighed only slightly against the State.[1] *Fallen v. State*, 289 Ga. 247, 248 (2) (710 SE2d 559) (2011). And, that is precisely what the superior court did.

C. *Defendant's assertion of the right to a speedy trial.* The superior court weighed this factor heavily against Higgenbottom. It did so after noting that Higgenbottom did not file his constitutional speedy trial motion to dismiss until over two years following his arrest and after he requested and was granted a continuance, nor did he avail himself of his statutory right to a speedy trial. These circumstances support the superior court's determination to weigh this factor against Higgenbottom.[2] *Bowling v. State*, 285 Ga. 43, 45-46 (1) (c) (673 SE2d 194) (2009); *Nelloms v. State*, 274 Ga. 179, 181 (549 SE2d 381) (2001).

D. *Prejudice to the defendant.* This factor addresses three interests which the right to a speedy trial was designed to protect, with the last interest being of the most import; these interests are to prevent pre-trial incarceration from being oppressive, to minimize any anxiety and concern on the part of the accused, and to limit possible impairment of the defense. *Fallen v. State*, supra at 249 (4).

As Higgenbottom acknowledges, oppressive incarceration is not at issue inasmuch as he was released on bond only eight days after his arrest. However, he urges that he suffered significant anxiety and concern as he was interrogated by police multiple times and for an extended period, the accusation of infanticide has "hung over [his] head" for many months and continues, and his defense has been severely impaired.

As to the second interest, anxiety and concern are always present to some extent during the pendency of a criminal prosecution, and Higgenbottom has not made any unusual showing in this regard; therefore, this interest will not be determined in his favor. *Fallen v. State*, supra at 249 (4); *Mullinax v. State*, 273 Ga. 756, 759 (2) (545 SE2d 891) (2001).

Higgenbottom cites prejudice from the death of Dr. James, and the resulting inability to question him about the medical and

---

[1] In argument, Higgenbottom also asserts that the State delayed handing over discovery material for two years following his arrest, and then did so only three weeks prior to the scheduled trial date, so that it must be concluded that the State intended to disrupt the defense. However, there is no evidence of any intentional or deliberate action on the part of the State to withhold discovery or, by action or inaction, in any manner attempt to hamper the defense.

[2] Higgenbottom complains that the superior court's citing of his failure to timely file a motion to dismiss after his arrest ignores that an accused must be indicted before the accused can file a motion to dismiss the charges; however, such complaint is unavailing as an accused may assert the right to a speedy trial prior to indictment, and the pre-indictment failure to assert the right may be weighed against the accused. *Haisman v. State*, 242 Ga. 896, 899 (2) (252 SE2d 397) (1979).

photographic evidence he presumably utilized in reaching his later discredited conclusion that the infant's death was accidental. However, the accused's constitutional rights to a speedy trial attach at the time of arrest or when formal charges are brought, whichever is first in time. *Wimberly v. State*, supra at 65. Thus, any impact on Higgenbottom's case by the death of Dr. James existed prior to the attachment of his constitutional rights to a speedy trial. *Herndon v. State*, 277 Ga. App. 374, 379 (4) (c) (626 SE2d 579) (2006); compare *Hester v. State*, 268 Ga. App. 94 (601 SE2d 456) (2004). Furthermore, it appears that the State is willing to stipulate to the admission of Dr. James's autopsy report. See *Nelloms v. State*, supra at 181. Simply, Higgenbottom has failed to show that the superior court was in error in finding that he made no showing of actual prejudice to his defense.

There was no abuse of the superior court's discretion in denying Higgenbottom's motion to dismiss based on alleged violations of his constitutional rights to a speedy trial. *Fallen v. State*, supra at 249 (4).

2. Higgenbottom also contends that the superior court erred in failing to dismiss the indictment because the delay in his arrest and indictment violates his rights to due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section I, Paragraph I of the 1983 Georgia Constitution. However, as already noted, Higgenbottom was not in custody during the period in question. See Division 1 (A), supra. And, as Higgenbottom acknowledges, in order for a delay to constitute a violation of due process, it must cause actual prejudice to the defense and it must be the product of deliberate action by the prosecution designed to gain a tactical advantage. *Jones v. State*, supra at 320-321 (1); *Wooten v. State*, supra at 878 (1). But, as has been discussed, neither actual prejudice nor deliberate adverse action on the part of the State has been shown. See Division 1 (D), supra.

3. Higgenbottom contends that the superior court erred in failing to grant his "plea in bar and motion to dismiss" and also presumably his "general demurrer," and thereby, to prohibit prosecution of the non-murder counts in the indictment, as they are barred by the applicable statutes of limitation.[3] But, there was no error is denying such motions on the basis urged.

---

[3] It should be noted that OCGA § 17-3-2.1 expressly excludes from periods of limitation prosecution for certain offenses, including the situation of a victim of a violation of OCGA § 16-5-70, relating to cruelty to children if the victim is under 16 years of age on the date of the violation. Under this provision, the time period in which a prosecution must be commenced does not begin to run until the victim has reached the age of 16 or the violation is reported to a law enforcement agency, prosecuting attorney, or other governmental agency, whichever event occurs first.

Under OCGA § 17-3-2 (2),[4] the applicable statute of limitation is tolled during any period in which the "person committing the crime is unknown or the crime is unknown." The knowledge component of this exception has been construed as requiring the State to have actual knowledge of the identity of the alleged perpetrator of the crime. *Beasley v. State*, 244 Ga. App. 836 (536 SE2d 825) (2000). And, the record does not support a finding that the State had actual knowledge that there was criminal wrongdoing resulting in the fatality much less that Higgenbottom would be charged as the perpetrator of the baby's death, until the superseding medical examiner's report in 2007. Although it is true that Higgenbottom was interviewed by authorities shortly after the crimes, this was done as part of the investigative process, and during the time frame when the baby's injuries had been determined to have been accidentally sustained. Compare *Jenkins v. State*, 278 Ga. 598 (604 SE2d 789) (2004).

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 29, 2011.

David J. Dunn, Jr., for appellant.
Herbert E. Franklin, Jr., District Attorney, Alan C. Norton, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.

---

[4] OCGA § 17-3-2 provides:
The period within which a prosecution must be commenced under Code Section 17-3-1 or other applicable statute does not include any period in which:
(1) The accused is not usually and publicly a resident within this state;
(2) The person committing the crime is unknown or the crime is unknown;
(3) The accused is a government officer or employee and the crime charged is theft by conversion of public property while such an officer or employee; or
(4) The accused is a guardian or trustee and the crime charged is theft by conversion of property of the ward or beneficiary.