296 Ga. 561
FINAL COPY

S14A1749. JONES v. THE STATE.

BENHAM, Justice.

Appellant Quinton Jones appeals his convictions for malice murder and other related offenses arising out of a drug transaction.[1] For reasons set forth below, we affirm.

Viewed in the light most favorable to the verdicts, the evidence at trial

---

[1] The crimes occurred on February 9, 2006. On August 22, 2006, a Fulton County grand jury returned an indictment charging appellant with malice murder, felony murder (aggravated assault with a deadly weapon), aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon, and possession of more than one ounce of marijuana. Appellant was tried November 5-7, 2008, and a jury found him guilty on all counts. On November 7, 2008, the trial court sentenced appellant as follows: The trial court sentenced appellant to life imprisonment for the malice murder conviction; with respect to the conviction on the possession of a firearm during the commission of a felony count, appellant was sentenced to five years imprisonment to run consecutively to the life sentence imposed for the malice murder conviction; with respect to conviction on the possession of a firearm by a convicted felon count, appellant was sentenced to five years imprisonment to run consecutively to the life sentence for the malice murder conviction; and with respect to conviction on the possession of marijuana conviction count, appellant was sentenced to ten years imprisonment to be served concurrently to the life sentence. The remaining counts were merged or vacated by law. Appellant filed a motion for new trial on February 17, 2009, which was later amended, and after a hearing on the motion, the trial court denied appellant's amended motion for new trial by order filed July 11, 2011. Appellant filed a notice of appeal within thirty days of that order, but on May 5, 2014, this Court dismissed appellant's initial appeal on the ground that his original motion for new trial was filed untimely and was therefore void. On May 9, 2014, appellant filed a motion for out-of-time appeal. In an order dated June 9, 2014, the trial court granted appellant's motion for out-of-time appeal and re-entered its previous order denying appellant's amended motion for new trial. Appellant timely filed a notice of appeal, and the case was docketed in this Court to the September 2014 term for a decision to be made on the briefs.

showed that on the afternoon of February 9, 2006, witness Jabari Gibbs and victim Marquiese Pierce stopped their car at a take-out restaurant in East Point to order something to eat while waiting to meet with appellant to transact a drug deal. While driving around with Pierce that afternoon waiting for appellant to meet them, Gibbs heard Pierce speak to appellant over the phone a number of times to arrange the meeting. Pierce planned to sell appellant marijuana hidden in garbage bags inside the car. Gibbs testified he had known appellant for approximately one year, during which time he had seen appellant approximately three times per month, and had witnessed similar transactions between appellant and Pierce. Gibbs identified appellant out of a photographic lineup as the person known to him as "Black."

At the restaurant, Gibbs saw appellant drive up in a green four-door car accompanied by a person known to him as "Big Boy," who was later identified as George Willingham, and another man he did not know, and they parked next to the car Gibbs and Pierce occupied. Appellant exited the green car and got into the car with Gibbs and Pierce. Appellant and Pierce started discussing the price for the marijuana. Gibbs heard Pierce tell appellant to "take a whole pound . . . take the whole thing and let them see that." Gibbs entered the

restaurant, and while inside, he was alerted to a commotion outside and turned to see appellant, Willingham, and the unknown third man pulling the bags of marijuana out of the car Gibbs and Pierce had arrived in and loading them into the green car. Gibbs also saw that appellant and one of the other individuals each had a pistol. As Gibbs ran outside to check on Pierce, the other men sped off in the green car. Gibbs observed Pierce slumped over the rear passenger side of the car.

The officer who responded to a call about the shooting testified that Gibbs ran up yelling, "They didn't have to kill my boy," that Gibbs stated he knew one of the perpetrators as "Black," and that the men fled in a green car. Susan Kim, whose family members owned the restaurant, testified she was working there at the time of the shooting. She called 911 after learning someone had been shot. Testimony established that the 911 call was logged in at 5:52 p.m. Kim testified when she heard a customer say that someone had been shot, she went to the side window and looked out. Kim also recalled reviewing the restaurant surveillance video immediately after dialing 911, and that she saw a green car in the parking lot. Witness Ladeidra Cunningham testified she had known appellant about seven months before this incident and that appellant and another person had

3

driven a green car into her yard and abandoned it there in February 2006, after which she had not seen appellant again. Cunningham identified appellant at trial. The medical examiner testified that Pierce sustained two gunshot wounds, that the cause of death was a gunshot wound to the neck that passed into the head, and that the manner of death was homicide.

1. Appellant does not raise the issue of the sufficiency of the evidence to sustain his conviction. Nevertheless, as is this Court's practice, we have reviewed the evidence and considered its legal sufficiency, and conclude that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. It appears to be undisputed that appellant's trial counsel was terminally ill at the time of the trial and died shortly thereafter. All but one of appellant's enumerations of error are based on his claim that trial counsel was impaired at trial and provided constitutionally ineffective assistance. Appellant first asserts the trial court erred in denying that portion of his motion for new trial brought on the ground that trial counsel provided ineffective assistance of counsel by

failing to participate effectively in the voir dire of the jury or the opening statement. Appellant claims trial counsel's diminished capacity was evident starting with the voir dire of potential jurors, when he asked no questions of over half of the forty-one potential jurors, and only one or two irrelevant questions of those whom he did question. Appellant claims counsel's diminished capacity was further demonstrated by the brevity of his opening statement, noting that the State's opening statement comprises over five pages of the trial transcript, whereas defense counsel's opening comprises barely a page. In his opening, trial counsel told the jury that appellant was not present at the scene of the crimes, thereby, according to appellant, raising the expectation that evidence supporting that representation would be presented. In fact, trial counsel failed to call alibi witnesses who, appellant claims, could have testified he was in Selma, Alabama, on the day in question. Citing only to *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), appellant argues that constitutionally ineffective assistance of counsel is demonstrated by counsel's failure to participate effectively in these essential portions of the trial.

The record shows trial counsel did participate in the voir dire process and

gave an opening statement. During the brief opening statement, counsel addressed the evidence the jury would hear and introduced appellant's defense theory that he was not present at the victim's death. He further asserted that Gibbs, the State's key witness, would testify so as to exculpate himself. A strong presumption exists that trial counsel's performance was reasonable and that counsel's decisions and choices at trial fell within the broad range of professional conduct as assessed from counsel's perspective at the time of trial and under the specific circumstances of the case. See *Miller v. State*, 295 Ga. 769 (2) (a) (i) (764 SE2d 135) (2014); *Hendricks v. State*, 290 Ga. 238, 241 (4) (719 SE2d 466) (2011). Even where, as here, trial counsel is no longer available to testify regarding the manner in which he conducted appellant's defense at trial, appellant must still overcome this presumption. See *Sweet v. State*, 278 Ga. 320 (8) (602 SE2d 603) (2004) (in a case in which appellant's trial counsel was deceased at the time of the amended motion for new trial hearing, this Court held that in the absence of evidence to the contrary, trial counsel's actions are presumed to be strategic and that appellant presented no evidence to support the assertion that trial counsel's failure to object to a comment made by the State's attorney in closing argument demonstrated ineffective assistance). The record

6

shows no evidence was presented to defeat the presumption that trial counsel's decisions and choices with respect to his participation in voir dire questioning and the content of his opening statement were part of his reasonable trial strategy and were within the range of reasonable professional conduct. Thus we affirm the trial court's denial of that portion of appellant's motion for new trial dealing with trial counsel's participation in the voir dire process and his opening statement.

3. Appellant also asserts ineffective assistance of trial counsel in that he was unprepared, failed to cross-examine certain witnesses, and failed to make an effective cross-examination of other State witnesses. Specifically, however, appellant points only to the testimony of the medical examiner and Ms. Kim. Counsel's failure to cross-examine the medical examiner does not establish ineffective assistance of trial counsel since that witness testified only to the manner and cause of death, elements of the State's case that were not contested. Accordingly, there is no showing that his failure to cross-examine this witness prejudiced his case, one of the two requirements of the *Strickland* test for showing constitutionally ineffective counsel.

Counsel did cross-examine Ms. Kim, who testified, among other things,

about the presence of a green car at the scene of the shooting. Her testimony as a whole shows she was uncertain at the time of trial as to whether she saw the green car through the window before the shooting or only upon reviewing the restaurant surveillance videotape, which she reviewed after calling the police. She testified unequivocally, however, that she remembered a green car, and went on to testify that she recalled both the victim's car and the green car were parked on the right side of the restaurant. During cross-examination, trial counsel elicited testimony from Ms. Kim that when she looked through the window, she only saw the victim's car. Trial counsel then highlighted, during his closing argument to the jury, Ms. Kim's uncertainty about the green car and when and how she saw it, stating Ms. Kim "may have seen a green car, but she may have seen it on a tape. She's not sure. That was never clarified." Appellant asserts that if trial counsel had reviewed the videotape he would have known, as the prosecutor pointed out in his closing argument, that all the store's cameras were focused on the inside of the store and not on the parking lot. Thus, he argues trial counsel failed to make an effective challenge to Ms. Kim's credibility.

In fact, the record shows counsel did attempt to challenge Ms. Kim's

credibility on cross-examination and in his closing argument, even if it was not to the extent or in the manner in which appellant asserts, in hindsight, counsel should have challenged it. "[T]he extent of cross-examination is a strategic and tactical [one]." *Fairclough v. State*, 276 Ga. 602, 605 (4) (581 SE2d 3) (2003). Further, effective counsel does not mean "errorless counsel, [nor] counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *Pitts v. Glass*, 231 Ga. 638, 639 (203 SE2d 515) (1974). Likewise, we have examined the trial transcript and conclude appellant's trial counsel's performance in cross-examining, or failing to cross-examine, the other State witnesses cannot be deemed insufficient pursuant to a *Strickland* analysis. Again, appellant failed to show trial counsel's performance was not within the range of reasonable professional conduct. We find no error in the trial court's denial of that portion of appellant's motion for new trial dealing with trial counsel's cross-examination of State witnesses.

4. Appellant asserts ineffective assistance of trial counsel in that counsel failed to subpoena or call the alibi witnesses identified by appellant. At the motion for new trial hearing, appellant presented the testimony of two witnesses who were residents of Selma, Alabama, and who attested that on the date of the

crimes, appellant also lived in Selma. One witness, who is appellant's sister, testified she saw appellant daily in Selma, that she saw him on the day of the murder for about an hour beginning around 3:30 or 4:00 in the afternoon when he came to her house to bring money for her to buy shoes. She testified that he returned to her house at around 10:00 p.m. to go out to a club. This witness testified that appellant had no car at that time and was driven around by friends or family. According to the witness, it takes approximately three hours to drive from Selma to Atlanta. She stated she was never contacted by anyone about testifying at trial. The other witness testified that on the morning of the murder appellant was with her at a hotel in Selma, and she confirmed that he had no vehicle. They parted company at about 11:00 a.m. and she saw him again that evening before he left to go out to a club. She testified she had spoken to him by phone one or more times during the day. This witness testified she was contacted at some point prior to the trial by a man who identified himself as appellant's counsel. She told him she could come to Georgia to testify, but she was never subpoenaed.

Appellant argues that trial counsel's failure to call these witnesses who could have contradicted the testimony of Gibbs, the only witness who placed

10

appellant at the scene of the shooting, was a critical deficiency in counsel's performance in the case. According to appellant, his counsel's opening statement created an expectation that he would present evidence to support the defense that appellant was not present at the scene of the shooting. But, appellant asserts, instead of offering alibi witnesses, the only evidence counsel offered for the defense was a certified copy of co-indictee Willingham's acquittal on the murder charge, and in reliance on this evidence, counsel argued in his closing that since the co-indictee had been acquitted, appellant also should be acquitted. According to appellant, that also constituted deficient performance since it ignored the factual distinctions between the testimony about appellant's involvement in the events leading up to the shooting and the testimony that Willingham, by contrast, never left the green vehicle and was not involved in the shooting. Appellant further urges that counsel's alleged deficient performance constitutes ineffective assistance of counsel because if he had presented alibi evidence, instead of relying solely on the co-defendant's acquittal, a reasonable probability exists of a different trial outcome.

In support of this argument, appellant presented only the testimony of himself and his two alibi witnesses at the motion for new trial hearing. He

11

presented no documentation to support his presence in Selma at the time of the offense, such as hotel records or receipts or phone records. Although counsel, himself, was deceased and unavailable to testify, appellant did not present the testimony of trial counsel's investigator, who testified at a pre-trial hearing that he contacted appellant's alibi witnesses in preparation of appellant's defense, to verify what the witnesses had told him. Likewise, trial counsel's file, which would presumably contain notes and other evidence of trial preparation, was not produced for the hearing.

Decisions as to which defense witnesses will be called is a matter of trial strategy and tactics, and such decisions, even if erroneous, do not constitute ineffective assistance of counsel unless they are so unreasonable that no competent attorney would have made them under the circumstances. *Miller v. State*, 296 Ga. 9, 12 (4) (a) (764 SE2d 823) (2014). When reviewing a claim that trial counsel's performance was deficient, "this Court applies a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Gill v. State*, 295 Ga. 705, 708 (2) (763 SE2d 719) (2014). This presumption is particularly difficult to overcome where, as here, trial counsel is not available to testify. See *Morgan v. State*, 275

12

Ga. 222, 227 (10) (564 SE2d 192) (2002). Here, as in *Morgan*, appellant "made no affirmative showing that the purported . . . deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy." (Citations and punctuation omitted.) Id. No evidence was presented from which to determine, for example, trial counsel's assessment of these witnesses' credibility since one was appellant's sister and the other a woman with whom he apparently had an intimate relationship. Trial counsel's decisions relating to strategy and tactics are not judged by hindsight. See *Grissom v. State*, 296 Ga. 406 (768 SE2d 494) (2015). From the evidence presented in this case, appellant failed to defeat the strong presumption of counsel's reasonable professional assistance. The *Strickland* test requires appellant to show both deficient performance of trial counsel as well as prejudice from the deficient performance. *Gill v. State*, supra, 295 Ga. at 708. Having failed to carry this burden with respect to a showing of deficient performance, we find no error in the trial court's denial of that portion of appellant's motion for new trial dealing with these purported deficiencies of counsel.

5. Appellant asserts trial counsel provided ineffective assistance by

failing to challenge any of the State's trial exhibits or to make appropriate objections to exhibits. Specifically, he points to the fact that counsel failed to object to the admission of three photographs of the exterior of the premises on foundational grounds, and that he failed to object to admission of the surveillance videotape recording on chain of custody grounds. Even if such objections had merit and would have been granted, an issue we do not address, appellant fails to demonstrate how he was prejudiced by the admission of this evidence. The photographs simply purport to show the exterior of the premises at some time other than when the shooting transpired, and it is not obvious how their admission prejudiced appellant's defense. The parties agree that the videotape simply shows the interior of the premises, and the transcript shows no one identified appellant from the videotape. Without a showing of prejudice from counsel's professional conduct, one of the required elements of the *Strickland* test is missing, and ineffective assistance is not shown.

Appellant also asserts ineffective assistance as a result of counsel's failure to object to autopsy photographs on the ground that they were overly graphic and therefore excessively prejudicial. A review of the referenced exhibits shows they are pre-incision autopsy photographs of the victim's body, along with a

14

photograph of the bullet removed from the victim's body.

> Generally, pre-incision autopsy photographs of the victim are admissible if relevant and material to any issue, even if they . . . may inflame the jury. This Court has deemed pre-autopsy photographs to be relevant and material, and therefore admissible, if they illustrate the nature and extent of the victim's wounds.

(Citations omitted.) *Browner v. State*, 296 Ga. 138, 143-144 (3) (765 SE2d 348) (2014). Having reviewed the full trial record, including the testimony of the medical examiner who authenticated these exhibits at trial, we conclude the photographs were not inadmissible as overly graphic and prejudicial. Deficient performance is not shown by trial counsel's failure to make an objection that lacks merit. See *Gilyard v. State*, 288 Ga. 800 (2) (708 SE2d 329) (2011), disapproved on other grounds by *State v. Sims*, 296 Ga. 465 (769 SE2d 62) (2015). We find no error in the trial court's denial of that portion of appellant's motion for new trial dealing with counsel's failure to raise objections to these specified exhibits.

6. Appellant shows that, for various reasons, the public defender's office appointed a succession of five different lawyers to represent him over a twenty-

four-month period before his case was tried.[2]  A statutory speedy trial demand was never filed.[3]  Appellant asserts that this repeated substitution of public defenders to represent him, none of whom announced ready for trial or sought a speedy trial on his behalf, had the effect of denying his right to a speedy trial and therefore constituted ineffective assistance of counsel.

For purposes of reviewing the trial court's denial of appellant's claim that the delay in trying his case constituted ineffective assistance of counsel, we apply, again, an analysis based upon *Strickland* — that is, whether appellant demonstrated both deficient performance and that he suffered prejudice as a result of such alleged deficiency.  Whether to file a demand for speedy trial is usually a matter of trial tactics and strategy, as a delay in bringing the case to trial may work to a defendant's advantage.  See, e.g., *Bowling v. State,* 289 Ga. 881, 889-890 (5) (717 SE2d 190) (2011); *Jenkins v. State,* 282 Ga. App. 55 (637 SE2d 785) (2006).  Here, appellant made no affirmative showing that the failure of his trial counsel or any of the previous attorneys appointed to represent him

---

[2]  The reasons ranged from conflict of interest, to reassignment of the attorney to a different judge's courtroom, to resignation from the public defender's office.

[3]  Although appellant states in his brief that he requested counsel to file such a demand, this assertion is not supported by testimony or other evidence in the record.

to seek a speedy trial was not a reasonable trial strategy of these attorneys. As with other tactical or strategic decisions, trial counsel's decision to file, or not, a demand for speedy trial should not be evaluated in hindsight. See *Napier v. State,* 276 Ga. 769, 776 (8) (583 SE2d 825) (2003). Again, appellant has failed to carry his burden of showing deficient performance of counsel with respect to the fact that none of his counsel made a demand for speedy trial. Accordingly, we find no error in the trial court's denial of that portion of appellant's motion for new trial dealing with that purported deficiency of counsel.

7. Finally, appellant asserts ineffective assistance of trial counsel as a result of counsel's failure to seek dismissal of the case upon the ground that the State violated his constitutional right to a speedy trial. We find no error in the denial of appellant's motion for new trial premised on this argument because, again, appellant failed to establish prejudice as a result of counsel's failure to seek dismissal of the case, in that he failed to establish that such a motion, if filed, would have been granted.

When a court examines an alleged denial of the constitutional right to a speedy trial, it is to apply a balancing test of the four factors that must be considered, pursuant to *Barker v. Wingo*, 407 U. S. 514 (IV) (92 SCt 2182, 33

LE2d 101) (1972): length of delay, reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. First, however, "a threshold determination must be made as to whether the interval between the accused's arrest, indictment, or other formal accusation and the trial is sufficiently long so as to be characterized as 'presumptively prejudicial.'" *Higgenbottom v. State*, 290 Ga. 198, 200 (1) (719 SE2d 482) (2011). Because a delay approaching one year is generally sufficient to raise a presumption of prejudice,[4] the two-year period between the time appellant was incarcerated and the time of trial is sufficient in this case to raise that presumption. Accordingly, if such a motion had been made in this case, the trial court would have been required to consider the four *Barker v. Wingo* factors. Id.

With respect to the first factor, the length of delay, the State concedes not only that the two-year delay in this case was uncommonly long but also that this factor should be held against the State. With respect to the second factor, the reason for delay, appellant asserted at the hearing on his motion for new trial that the delay was caused, in part, by a breakdown in the public defender's office in that the insufficient number of lawyers was a cause of the frequent

---

[4] See *Jenkins v. State*, 294 Ga. 506 (2) (a) (755 SE2d 138) (2014).

18

reassignment of counsel to appellant's case, any one of whom was not motivated to seek a speedy trial, according to appellant, since the ability of the appointed lawyer to prepare for trial was impaired by his or her case load. Generally, however, the failure of appointed counsel to seek a speedy trial is not attributable to the State, but to the defendant, since the duties and obligations of even court-appointed counsel are to the client defendant. See *Vermont v. Brillon*, 556 U. S. 81, 91 (II) (129 SCt 1283, 173 LE2d 231) (2009). Appellant presented no evidence to the trial court to support his assertion at the motion for new trial hearing that the failure to seek a speedy trial, or dismissal for the State's failure to accord a speedy trial, was due to a systematic breakdown of the public defender system that could be charged to the State. Accordingly, appellant failed to demonstrate that this factor would have been weighed against the State. The third factor in determining whether a defendant is entitled to dismissal for failure to provide a speedy trial is the defendant's assertion of the right to a speedy trial. Here, appellant did not invoke the right to a speedy trial at any time prior to trial. As noted above, appellant has failed to demonstrate that this failure to make a pre-trial assertion of his constitutional right to speedy trial is attributable to the State or should be weighed against the State. Instead,

19

had a motion to dismiss been filed, we conclude this factor would be weighed against appellant.

The final factor, prejudice to the defendant, "addresses three interests which the right to a speedy trial was designed to protect, with the last interest being of the most import; these interests are to prevent pre-trial incarceration from being oppressive, to minimize any anxiety and concern on the part of the accused, and to limit possible impairment of the defense." *Higgenbottom*, supra, 290 Ga. at 202. We have already deemed that the period of time between appellant's incarceration and trial was presumptively prejudicial for purposes of requiring a consideration of the four *Barker v. Wingo* factors, but this does not preclude the necessity of assessing whether actual prejudice to these three interests is established. See *State v. Alexander,* 295 Ga. 154, 160 (2) (d) (758 SE2d 289) (2014); *Jenkins v. State,* 294 Ga. 506, 512-513 (2) (b) (4) (755 SE2d 138) (2014). This Court has previously recognized that all incarceration is oppressive to some degree, but as in *Jenkins,* in this case appellant made no showing that he was subjected to any particular oppression as a result of his lengthy incarceration. Likewise, as in *Higgenbottom,* appellant failed to present evidence he suffered any unusual anxiety or concern as a result of the delay in

bringing his case to trial over and above that which is always present during a criminal prosecution. Further, appellant failed to present evidence of the most important interest protected by the right to a speedy trial in that he failed to present evidence that his ability to present a defense was prejudiced by the delay.

This opinion should not be construed as condoning or approving the two-year delay in securing a trial in this case to the extent this delay resulted from the succession of appointed trial counsel. Nevertheless, appellant made no showing that the case against him would have been dismissed even if his trial counsel had moved for dismissal on the ground that his constitutional right to speedy trial had been violated. Consequently, appellant failed to establish prejudice as a result of counsel's alleged deficient performance in this regard, and failed to demonstrate the trial court erred in denying his motion for new trial on this ground. See *Chalk v. State*, 318 Ga. App. 45, 48 (1) (c) (733 SE2d 351) (2012).

Judgment affirmed. All the Justices concur.

Decided February 16, 2015.

Murder. Fulton Superior Court. Before Judge Russell.

Barbara M. Collins, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Lenny I. Krick, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Rochelle W. Gordon, Assistant Attorney General, for appellee.