**FOURTH DIVISION**
**BARNES, P. J.**
**MCMILLIAN and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 22, 2016**

# In the Court of Appeals of Georgia

A15A2032. PRIEST v. THE STATE                                    PE-033C

PETERSON, Judge.

Clyde Joseph Priest appeals his convictions for child molestation and two counts of enticing a child for indecent purposes. He argues on appeal that (1) he should receive a new trial because his trial counsel was ineffective for failing to file a motion to dismiss the indictment based upon a violation of his right to a speedy trial and (2) there was insufficient evidence to support his convictions. Because the trial court failed to address part of one of Priest's arguments (that the denial of his right to a speedy trial resulted in actual prejudice to his defense), we vacate the trial court's order denying the motion for a new trial and remand for further consideration of that issue.

Priest was tried and convicted based on allegations involving two girls, J.W. and L.G., who lived in the same trailer park as he. Priest was arrested on November 14, 2007, and indicted on March 28, 2008. His trial began on October 18, 2012. At the close of the prosecution's case, the defense made a motion for a directed verdict, which the trial court denied. The jury found Priest guilty on all three counts. Priest's trial counsel made a motion for new trial, and his appellate counsel filed amended motions for new trial. Those motions were denied.

1.      Priest argues that the trial court erred in finding that his trial counsel was not ineffective for failing to move to dismiss the indictment prior to trial based on violations of Priest's constitutional right to a speedy trial. In reviewing a claim of ineffective assistance of counsel, we apply the analysis of *Strickland v. Washington*, 466 U.S. 668 (104 S. Ct. 2052, 80 LE2d 674) (1984), considering whether Priest shows both that his counsel's performance was deficient and that he suffered prejudice as a result of such alleged deficient performance. *Jones v. State*, 296 Ga. 561, 567 (4) (769 SE2d 307) (2015). "In reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo." *Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (citation omitted).

In order to establish prejudice by his counsel's failure to file a motion to dismiss on speedy trial grounds, Priest must show that such a motion would have been granted had it been filed. *See Jones*, 296 Ga. at 569 (7); *Chalk v. State*, 318 Ga. App. 45, 48 (1) (c) (733 SE2d 351) (2012). A threshold determination in examining an alleged denial of the constitutional right to a speedy trial is "whether the interval between the accused's arrest, indictment, or other formal accusation and the trial is sufficiently long so as to be characterized as presumptively prejudicial." *Jones*, 296 Ga. at 570 (7). If it is, the court is to apply a balancing test of the four factors identified in *Barker v. Wingo*, 407 U.S. 514 (IV) (92 S. Ct. 2182, 33 LE2d 101) (1972): "length of delay, reason for the delay, the defendant's assertion of the right, and prejudice to the defendant." *Jones*, 296 Ga. at 569-70 (7). In reviewing a trial court's consideration of whether a delay in bringing an accused to trial amounts to a denial of his right to a speedy trial, "we must accept the factual findings of the trial court unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion, even though we might have reached a different conclusion were the issue committed to our discretion." *State v. Buckner*, 292 Ga. 390, 391 (738 SE2d 65) (2013) (internal citation omitted).

In denying Priest's motion for a new trial, the trial court found that the delay between Priest's arrest and trial, a period of approximately 59 months, was presumptively prejudicial and uncommonly long, and weighed the reason for delay against the State. The trial court found that Priest's failure to assert his speedy trial right weighed heavily against him and that Priest had shown no actual prejudice as a result of the delay. On appeal, Priest argues that the trial court erred by weighing the failure to assert the right heavily against him and by finding that Priest had experienced no actual prejudice.

A delay approaching one year is generally sufficient to raise a presumption of prejudice. *Jones*, 296 Ga. at 570. Here, the delay between Priest's November 2007 arrest and the beginning of his jury trial in October 2012 amounted to nearly five years and was presumptively prejudicial, a point the State concedes. Accordingly, if Priest had made a motion to dismiss based on speedy trial grounds, the trial court would have been required to consider the four *Barker* factors. *Id*.

The State also concedes that the length of the delay should be weighed against the State. As to the second factor, the State has offered no explanation for why the case took several years to be set for trial. At the motion for new trial hearing, Priest's trial counsel testified that she talked to Priest about the case "evidently being off of

4

the State's radar." "[W]hen no reason appears for a delay, it will be treated as caused by the State's negligence," although such negligence is considered "relatively benign, and therefore, this factor should be weighed only slightly against the State." *Higgenbottom v. State*, 290 Ga. 198, 201-02 (1) (B) (719 SE2d 482) (2011) (footnote and citation omitted). Thus, the trial court did not err in weighing the second factor against the state.

The third factor, the defendant's assertion of the right, weighs against Priest. Priest's trial counsel testified that Priest would call her about every six months or so to check in and she did not recall him asking her to assert his speedy trial rights, although they "would frequently discuss the merits of letting the case sit." Priest concedes that his counsel never filed a speedy trial demand. He does not dispute that this factor should weigh against him but argues that it should not have "weighed heavily" against him as found by the trial court, given that trial counsel still could have prevailed on a motion to dismiss based on the other *Barker* factors. Although a lengthy delay in asserting a right to a speedy trial does not necessarily require that a motion to dismiss be denied, *see State v. Nagbe*, 302 Ga. App. 682, 686 (5) (691 SE2d 593) (2010), such a delay "is entitled to strong evidentiary weight" against the defendant. *Brannen v. State*, 274 Ga. 454, 456 (553 SE2d 813) (2001) (citations and

internal punctuation omitted). Thus, the trial court did not err in weighing this factor heavily against Priest.

The final factor, prejudice to the defendant, involves consideration of three interests that the right to a speedy trial is designed to protect: preventing pre-trial incarceration from being oppressive, minimizing any anxiety and concern on the part of the accused, and limiting possible impairment of the defense. *Jones*, 296 Ga. at 571 (7). The last is the most important of these, and the only one at issue here. *Id.* Pre-trial incarceration is not implicated, because Priest was granted bond within a few weeks of his arrest, and Priest presented no evidence that he suffered any unusual anxiety or concern as a result of the delay in bringing his case to trial. *See id.* Instead, he argues that he was prejudiced when two defense witnesses, Joseph Shipman and a witness named "Dana," "disappeared" during the delay. "If witnesses die or disappear during a delay, the prejudice is obvious." *Nagbe*, 302 Ga. App. at 686 (4) (footnote omitted).

Priest's trial counsel testified that she had a handwritten letter in her file that appeared to be signed by someone named Joseph Shipman. The letter says that J.W. had admitted to Shipman that she had brought false accusations against both her

6

father[1] and Priest. Trial counsel said that she believed that letter had been gathered by a former investigator in her office, who took other employment shortly after conducting the initial investigation in the case and who did not leave good notes. Trial counsel said it appeared her investigator was able to reach Shipman when the case started, but the lawyer was not able to reach Shipman subsequently and never spoke to him personally. Trial counsel said she believed her office confirmed that Shipman was a registered sex offender - but could not say that for sure - and had received some information that he may have moved to Florida.

Trial counsel also testified that Dana's name appeared in the case file, as well, in notes that refer to a false allegation by J.W. Trial counsel said that notes that may be in the prior investigator's handwriting refer to a Dana Sheppell, but was not sure if this was the same person as Dana Wright, who was referred to in notes by an investigator who took over the matter later. The lawyer said she was not able to locate any witness named Dana.

[1]According to a portion of a police report read into evidence during the motion for new trial hearing, J.W.'s mother told police that J.W. had accused her father of molesting her when she was eight years old, resulting in him being sent to prison, then later admitted to her mother that the alleged crime did not happen. It appears, according to testimony by Priest's trial counsel, that a post-trial challenge to the conviction of J.W.'s father was rejected because the trial court in that case found J.W. had testified truthfully.

In denying the motion for a new trial, the trial court mentioned only Shipman, not the witness named Dana. The trial court wrote that Shipman "had written a note, maybe, that [J.W.] had told him that her accusations against her father had been false." The trial court found that Shipman would not have been a credible witness even if he had been found and produced at trial. The trial court also said it was unlikely that Shipman's testimony would have survived a hearing under *Smith v. State*, 259 Ga. 135 (377 SE2d 158) (1989).

*Smith* addressed the admissibility of an alleged victim's alleged past false accusations of sexual misconduct against persons *other than the defendant*. 259 Ga. at 135-38 (1). In that case, our Supreme Court held that, before allowing such evidence to be admitted, the trial court must determine outside of the presence of the jury "that a reasonable probability of falsity exists." *Id.* at 137-38 (1) (citation omitted). But the rule articulated in *Smith* does not apply to any testimony by Shipman that J.W. had admitted to falsely accusing Priest, because *Smith* addressed past false accusations against third parties, not accusations against the defendant currently before the court. The trial court's order does not show any consideration of the possibility that Shipman also might have testified that J.W. had admitted to

8

falsely accusing Priest, nor does it show the trial court considered the prejudice, if any, related to any testimony by Dana.

The application of the principles set forth in *Barker* to the facts of a particular case "is a task committed principally to the discretion of the trial courts, and it is settled law that our role as a court of review is a limited one." *Buckner*, 292 Ga. at 391 (footnote omitted). The existence of actual prejudice resulting from a delay in bringing a case to trial is among those questions committed to the discretion of the trial court. *See State v. Brown*, 315 Ga. App. 544, 553 (3) (726 SE2d 500) (2012). When the trial court makes a factual mistake in applying the *Barker* factors, the usual course is to vacate the decision of the trial court and remand. *See id*. Thus, we will not substitute our own analysis of the prejudice question but instead will provide the trial court an opportunity to consider fully the matter in the light of the full breadth of Shipman's possible testimony, as well as any possible testimony by Dana. Given the potentially probative nature of such evidence, as well as the lengthy delay in this case, we cannot conclude that, even if it had considered all that these potential witnesses might have testified to, the trial court would have been required as a matter of law to

9

weigh the *Barker* factors as it did and deny the motion for a new trial, anyway.[2] *See id.* (although a trial court's ruling on motion to dismiss for speedy trial violation may be affirmed despite a clear error in a finding of material fact "if, putting aside that clear error, the trial court would still be required, as a matter of law, to exercise its discretion in the same way that it did," such instances are "unusual"). Therefore, we vacate the trial court's denial of a motion for new trial and remand for the trial judge to revisit the question of prejudice.[3]

---

[2]We do note, however, the irony that Priest is claiming that a delay in getting his case to trial caused him prejudice in the form of two disappearing defense witnesses, when his trial counsel testified that she did not make a demand for a speedy trial in hopes that the passage of time would result in problems with the State's witnesses that would work in Priest's favor. In other words, Priest rolled the dice hoping that they would come up sixes; when they came up snake eyes, he now claims that rolling was a mistake in the first place. In weighing the *Barker* factors on remand, the trial court is, of course, entitled to consider this. *See Brannen*, 274 Ga. at 457-58 (considering, in applying the *Barker* factors, the tactical advantage gained by the defense in deciding not to seek a speedy trial).

[3]Although it found that trial counsel had made a reasonable tactical decision not "to press the case," the trial court did not explicitly consider whether trial counsel's performance was deficient. Instead, as is permissible under governing U.S. Supreme Court precedent, it skipped to the question of prejudice by considering whether a motion to dismiss on speedy trial grounds would have been granted under *Barker*. *See Strickland*, 466 U.S. at 697 (IV) ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). Indeed, it difficult to determine whether counsel's failure to file a motion to dismiss is deficient when the meritoriousness of such a motion is unresolved. Given that the question of whether

10

2. Priest argues that the trial court erred by denying his motion for a directed verdict, specifically arguing that the enticement conviction on Count 3, that based on his interaction with L.G., was unsupported by sufficient evidence. Because we are vacating the trial court's order and remanding the case for further consideration, we will not consider Priest's sufficiency arguments at this time.

*Judgment vacated and case remanded. Barnes, P. J., and McMillian, J., concur.*

---

such a motion would have been granted remains unresolved, we will not be the first to consider whether counsel's performance was deficient.