In the

# United States Court of Appeals
### For the Seventh Circuit

No. 14-2093

IN RE: BURUJI KASHAMU,

*Petitioner.*

Petition for Writ of Mandamus
to the Northern District of Illinois, Eastern Division.
No. 94 CR 172-15 — **Charles R. Norgle**, *Judge.*

SUBMITTED AUGUST 18, 2014 — DECIDED SEPTEMBER 15, 2014

Before POSNER, KANNE, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* The petition for mandamus that is before us is the sequel to an appeal we decided three years ago in a litigation that began sixteen years ago. For it was in May 1998 that Buruji Kashamu, a dual citizen of Nigeria and Benin, was charged in an indictment returned by a federal grand jury in Chicago, along with thirteen other persons, with conspiracy to import heroin into the United States and distribute it, in violation of 21 U.S.C. § 963.

The government believed that Kashamu was the leader of the conspirators. He was indicted both in his own name and under what the government believed to be two aliases that he used: "Alaji" (the principal alias, the government

thought) and "Kasmal." So far as appeared, Kashamu had never entered the United States, and his current whereabouts were unknown. The government did not ask that he be tried in absentia. Eleven of the other defendants pleaded guilty, one proceeded to trial and was convicted, and another could not be found and remains a fugitive.

Several months after the indictment came down, Kashamu showed up in England and was arrested at our government's request. Justice Department lawyers, working with their English counterparts, sought his extradition to the United States to stand trial. There were two extradition proceedings, both unsuccessful, ending finally in January 2003 when the presiding judge refused to order him extradited. He had been detained throughout the extradition proceedings. As soon as the judge ruled, Kashamu left England for Nigeria, where he remains.

Six years later he filed a motion in the district court in Chicago to dismiss the indictment on the basis of findings that the English judge had made in refusing to order him extradited. The key findings were that Kashamu had a brother named Alaji who bore a "striking" resemblance to him, that the brother had been a member of the drug conspiracy being prosecuted in Chicago, and that Kashamu had informed on his brother and other co-conspirators. As we noted in our opinion ruling on the appeal from the district court's denial of the motion, "our government had not presented enough evidence to convince the English magistrate that Kashamu was Alaji, but Kashamu had not presented enough evidence to convince the magistrate that he was not Alaji." *United States v. Kashamu*, 656 F.3d 679, 687 (7th Cir. 2011).

Kashamu contended in his 2009 motion that these find-
ings should be given collateral estoppel effect in the criminal
proceeding and that if this was done he couldn't be convict-
ed and therefore shouldn't have to stand trial. We disagreed.
The English judge had not found that Kashamu had not
used the name "Alaji" as an alias. All he found was that the
government had presented insufficient evidence to satisfy
him that Kashamu was Alaji. One couldn't predict from that
finding (or the corollary findings listed in the preceding par-
agraph of this opinion) that Kashamu would or should be
acquitted if tried in federal district court on the charges in
the indictment. There was a good deal of evidence against
him. We noted in our previous opinion that among other
bits of evidence "Kashamu's codefendants who had pleaded
guilty had admitted their participation in the charged con-
spiracy and identified 'Alaji' as the leader of the conspiracy.
Two of them identified Kashamu as Alaji in a photographic
lineup, and in the extradition proceeding the government
submitted their affidavits to that effect. The government also
pointed out that when arrested upon arrival in England
Kashamu had been carrying approximately $230,000." *Id*. at
686; see also *id*. at 687–88.

 Kashamu remains in Nigeria, living openly, a prominent
businessman and a politician belonging to the ruling party.
Although the United States has an extradition treaty with
Nigeria, our government has made no effort to extradite
him.

All that we've said so far is by way of background. The
petition for mandamus grows out of a motion Kashamu filed
earlier this year in the district court in Chicago to dismiss the
indictment against him on the alternative grounds that the

court has no personal jurisdiction over him because he's never been in the United States (and so in assuming jurisdiction the district court violated the due process clause of the Fifth Amendment) and that the speedy-trial clause of the Sixth Amendment bars his prosecution because the government hasn't sought to extradite him for eleven years. Besides contesting both grounds, the government argues that as a foreigner, living abroad and not in U.S. custody abroad, which distinguishes this case from *Boumediene v. Bush*, 553 U.S. 723 (2008), Kashamu has no rights under the U.S. Constitution. That seems right; it would be very odd to think that someone with so attenuated a connection to the United States would have rights under the U.S. Constitution. But no matter; even if the government is incorrect and Kashamu does have constitutional rights, he still loses, because they haven't been violated.

He is correct that the district court has no jurisdiction over him at present. But should he ever come to the United States, whether voluntarily or involuntarily, he could be put on trial in the federal district court in Chicago, since the indictment has no expiration date. "An original indictment remains pending until it is dismissed or until double jeopardy or due process would forbid prosecution under it." *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990); see also *United States v. Smith*, 197 F.3d 225, 228–29 (6th Cir. 1999).

And Kashamu's contention that the Sixth Amendment's speedy-trial clause requires dismissal of the indictment is premature. The denial of a motion to dismiss on speedy-trial grounds is a nonappealable interlocutory order, *United States v. MacDonald*, 435 U.S. 850 (1978); *United States v. Bokhari*, 757

F.3d 664, 668–69 (7th Cir. 2014), because until the district court proceedings are complete the causes and duration of the delay, the defendant's responsibility for it, and the harm to the defendant from the delay, cannot be determined.

Only two possible avenues of relief remain open to him. One is to return to the United States to stand trial, and at trial (or in pretrial proceedings) renew his motion for dismissal on the basis of the speedy-trial clause; were the motion denied and he convicted, he could challenge the dismissal on appeal. His other possible recourse is to obtain from us, as he is trying to do, a writ of mandamus ordering the district court to dismiss the indictment. As he won't risk the first path to relief, which would require him to come to the United States and fall into the clutches of the federal judiciary, he must rely entirely on mandamus.

In opposing the petition for mandamus the Justice Department tells us that "the prospects for extradition [from Nigeria] have recently improved and, as a result, the government is optimistic about extraditing Kashamu." The implication is that Kashamu's motion to dismiss the indictment against him is premature, as he may soon find himself in the district court in Chicago, able to present a fuller case that his right to a speedy trial is being violated. But the government may be whistling in the dark in saying that it's optimistic about being able to extradite him from Nigeria (no doubt it was optimistic about being able to extradite him from the United Kingdom). The proof of the pudding is in the eating: the government has not tried to extradite Kashamu from Nigeria and for all we know may be feigning "optimism" in order to undermine Kashamu's claim that the threat of extradition is a Sword of Damocles disrupting his life without

our government's having to undergo the expense and uncertainty of seeking extradition of a foreign big shot exonerated (though only partly) by the judiciary of our British ally. Given Kashamu's prominence in Nigerian business and government circles, and the English magistrate's findings and conclusion, the probability of extradition may actually be low.

In addition to the threat of extradition proceedings that he claims continues to worry him, he argues that he is inhibited from traveling outside Nigeria lest the United States seek extradition of him from another country, as it did albeit unsuccessfully when it found him in the United Kingdom. He also claims that the outstanding indictment has besmirched his reputation and by doing so has impeded his business and political ambitions in Nigeria. These are reasonable concerns, but do not support the relief that he seeks from us. He was indicted 16 years ago. At any time during this long interval he had only to show up in the federal district court in Chicago to obtain a determination of his guilt or innocence. When a suspected criminal flees from imminent prosecution, becoming a fugitive before he is indicted, the statute of limitations on prosecuting him is suspended. 18 U.S.C. § 3290 ("No statute of limitations shall extend to any person fleeing from justice."); *United States v. Gibson*, 490 F.3d 604, 608 (7th Cir. 2007). Similarly, when a defendant flees the country to escape justice, the inference is that he didn't want a speedy trial—he wanted no trial. And if he doesn't want a speedy trial, he can't complain that the judiciary didn't give him one. *Barker v. Wingo*, 407 U.S. 514, 534–36 (1972); *United States v. Mitchell*, 957 F.2d 465, 469 (7th Cir. 1992). The defendant is as much a fugitive in the second case as in the first.

It's true that Kashamu didn't literally flee the United States, since he was never in the United States. But he knew he was under indictment in this country, yet rather than come here to fight the validity of the government's charges, he fought tooth and nail (and successfully) to prevent his being extradited from the United Kingdom to the United States. He not only was functionally a fugitive, see *United States v. Bokhari*, *supra*, 757 F.3d at 664, 672; *United States v. Marshall*, 856 F.2d 896, 898 (7th Cir. 1988), he deliberately forewent the opportunity for a speedy trial.

Some cases have suggested that the government has a duty to seek extradition of a fugitive, if feasible, if it wants to insulate its prosecution of the fugitive (should he ever show up) from a speedy-trial defense. *United States v. Walton*, 814 F.2d 376, 379–80 (7th Cir. 1987); *United States v. Tchibassa*, 452 F.3d 918, 924–25 (D.C. Cir. 2006); *United States v. Blanco*, 861 F.2d 773, 778 (2d Cir. 1988). What is true is that the government has to make sure that the fugitive is aware that he's been indicted or otherwise charged in the United States. But really that's all that should be true. Once he's warned, it's his choice whether to face the judicial music in the United States or forgo any speedy-trial right based on the time he spends out of the reach of our court system.

So we're not at all sure that the government ever must try to extradite a fugitive so as to protect his right to a speedy trial. It does no favor to the fugitive, who of course wants to remain beyond the reach of our court system—otherwise he'd leave his place of refuge voluntarily and travel to the United States. But this is not the case in which to wrestle the issue to the ground, since of course the government *did* try—made in fact strenuous, protracted, albeit eventually futile

efforts—to get Kashamu back to the United States from the United Kingdom.

It's not as if he *wants* to be extradited to stand trial in the United States on the very serious criminal charges against him but hasn't just so he won't have to pay for his plane ticket to Chicago. One of his codefendants was sentenced to 10 years in prison. If Kashamu was indeed the ringleader of the drug conspiracy, as he may have been, he might if convicted be given an even heavier sentence--quite possibly a life sentence; 21 U.S.C. § 960(b)(1)(A), authorizes a life sentence for a conspiracy to import at least a kilogram of heroin. If he wants to fight the charges, he has only to fly from Lagos to Chicago; there are loads of reasonably priced flights. See Priceline.com, "Cheap Flights from Lagos, Nigeria, to Chicago, IL," www.priceline.com/insideTrack/flights/Lagos-LOS-Chicago-CHI.html (visited Sept. 9, 2014).

How then can he argue with a straight face that the failure of the United States to extradite him entitles him to dismissal of the charges? He can't; and the petition for a writ of mandamus is therefore

DENIED.