**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 30, 2016**

# In the Court of Appeals of Georgia

A16A0023. THE STATE v. WOOD.                                    PE-001C

PETERSON, Judge.

The State appeals from the trial court's grant of defendant Johann Michael Wood's motion to dismiss the indictment on constitutional speedy trial grounds, arguing that the trial court erred in considering Wood's constitutional speedy trial motion without Wood having joined the issue or subjected himself to the court's jurisdiction, without Wood being present in court, and in failing to accord any weight to the trial delay caused by Wood's own actions. We vacate the trial court's order and remand to the trial court because the trial court made a factual error regarding a reason for the pre-trial delay that must be reconsidered.

The evidence in the record reveals the following facts. Sometime in 2006, Wood allegedly inserted his fingers into the victim's vagina and touched her breasts.

The victim, a member of Wood's extended family, was less than 16 years old at the time. Wood became aware that the victim made allegations to her family regarding his conduct, and he allegedly made a statement to one of his sisters that he was considering being chemically castrated. Wood's and the victim's families also discussed how to resolve the matter among themselves. The victim's mother allegedly told Wood she was not planning on making a police report, yet Wood's father and brother testified that the victim's mother's boyfriend made threats against Wood's life. Wood claims to have left the country to live with his mother, who was a resident of the Netherlands, on January 9, 2007. Warrants were issued for Wood's arrest on these charges on February 12, 2007, but they were never executed. On January 5, 2009, Wood was indicted on three counts of child molestation and three counts of aggravated sexual battery. His arraignment was set for January 27, 2009. Notice of the arraignment was mailed to his last known address in Georgia. When Wood did not appear for arraignment, a bench warrant was issued. At the request of the State, the case was dead docketed in March 2010 on the basis that Wood was a fugitive.

On September 9, 2013, Wood was re-indicted on the same charges contained in the 2009 indictment. An arrest warrant was subsequently issued based on the re-indictment.

Counsel for Wood entered an appearance on October 28, 2013. On March 23, 2015, new counsel for Wood entered an appearance and filed a motion to dismiss the indictment for violation of Wood's constitutional right to a speedy trial. Wood's prior counsel speculated in correspondence with counsel for the State that he was being replaced as counsel because he had refused to file a motion demanding a speedy trial.

In his motion to dismiss on constitutional speedy trial grounds, Wood stated that the U.S. government executed an extradition request to Finland on October 22, 2013, although the request is not part of the record before us. Wood claimed that his arrest and detention in Finland in September 2013 was the first time he became aware of the charges against him. Wood also represented that he was released on bond in April 2014, he fought extradition efforts, and has since been subject to a travel ban, meaning he is generally unable to leave Finland outside of agreeing to extradition to the U.S.

The State did not file any response to Wood's motion to dismiss. The trial court held a hearing on Wood's motion and subsequently granted it in a thoughtful and comprehensive 32-page opinion. The State filed a motion for reconsideration and for

a stay pending appeal, which the trial court denied for lack of jurisdiction without considering the merits,[1] and this appeal followed.

1. Before addressing the merits of the State's enumerations of errors, we must first address the State's reference to evidence submitted with its motion for reconsideration following the grant of Wood's motion to dismiss, which the State argues shows that the trial court abused its discretion in granting that motion. Specifically, the State introduced affidavits and other supporting documentation accompanying the request to extradite Wood that the parties mistakenly believed were already in the record. This evidence shows among other things that, contrary to testimony at the motion to dismiss hearing, Wood had contacted family members to inquire about the status of criminal charges against him. The State argues that this evidence may "shed light on whether the Trial Court's discretion was abused in reaching its decision to dismiss the indictment, particularly given its criticism of the State for its failure to present any evidence, rebut any testimony, or cite any legal authority to show that [Wood's] right to a speedy trial has not been violated." The

[1] The trial court entered its order of dismissal at 4:20 p.m. on June 30, 2015, the last day of the court's term. OCGA § 15-6-3(25)(A). The State filed its motion for reconsideration in the next term on July 7, 2015, and the trial court concluded that it lacked authority because the case was no longer before it.

State also attached an affidavit, dated after the hearing on Wood's motion to dismiss, from a trial attorney in the United States Department of Justice that provided detailed information about the extradition process.

To the extent the State relies upon any of the evidence submitted with its motion for reconsideration, that evidence is not properly before us. A party "cannot rely on evidence presented *after* trial to show that the trial court erred in [making] a decision the court had to make based on the evidence it had at that time." *Teasley v. State*, 293 Ga. 758, 763 (3) (b) (749 SE2d 710) (2013) (emphasis in original).[2] Thus, in considering the State's arguments on appeal, we are limited to the evidence submitted to the trial court when it ruled on Wood's motion.

2. The State argues that the trial court erred in considering Wood's constitutional speedy trial claims because he had not entered a plea or otherwise subjected himself to the court's jurisdiction. We disagree.

The Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"

---

[2] It is the State's responsibility to ensure that any evidence it intends to rely upon is properly submitted to the trial court for consideration, though the trial court has discretion to request that the parties supplement the record prior to entering its order where it appears the evidence was inadvertently omitted, and where both parties refer to it.

U.S. Const. Amend. VI. The Georgia Constitution also guarantees criminal defendants the right to a speedy trial, Ga. Const., Art. I, Sec. I, Para. XI (a), and "[t]he speedy trial right enshrined in the Georgia Constitution is coextensive with the federal guarantee." *Ruffin v. State*, 284 Ga. 52, 54 (2) (663 SE2d 189) (2008) (footnote omitted). Constitutional speedy trial claims are analyzed under the framework set forth in the U.S. Supreme Court's decisions in *Barker v. Wingo*, 407 U.S. 514 (92 S.C. 2182, 33 LE2d 101) (1972) and *Doggett v. United States*, 505 U.S. 647 (112 S.C. 2686, 120 LE2d 520) (1992). A threshold determination in evaluating an alleged denial of the constitutional right to a speedy trial is whether the accused has been subjected to a delay that is presumptively prejudicial. *Jones v. State*, 296 Ga. 561, 570 (7) (769 SE2d 307) (2015). If it is, the court is to apply a balancing test of the *Barker* factors: "length of delay, reason for the delay, the defendant's assertion of the right, and prejudice to the defendant." *Jones*, 296 Ga. at 569-70 (7). In reviewing a trial court's consideration of whether a delay in bringing an accused to trial amounts to a denial of his right to a speedy trial, "we must accept the factual findings of the trial court unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion[.]" *State v. Buckner*, 292 Ga. 390, 391 (738 SE2d 65) (2013) (internal citation omitted).

6

It is well settled that the constitutional right to a speedy trial attaches either at the time of the defendant's arrest or when formal charges are brought, whichever occurs earlier. *See United States v. Marion*, 404 U. S. 307, 321 (92 S.C. 455, 30 LEd2d 468) (1971); *Haismen v. State*, 242 Ga. 896, 897 (252 SE2d 397) (1979). Wood's constitutional right to a speedy trial arose on the date of the first indictment in January 2009.

The State essentially argues that Wood could not assert his constitutional speedy trial right in absentia. The State acknowledges that a defendant can waive his presence for court hearings, but contends a defendant may do so only after presenting himself in court. However, a defendant may waive formal arraignment, including through his conduct. *See Ferrell v. State*, 149 Ga. App. 405, 406 (3) (254 SE2d 404) (1979).

Here, even though Wood has not been properly arraigned, his filing of a motion to dismiss on speedy trial grounds constituted waiver of the arraignment. *See id.* (the demand for trial and the filing of a motion to suppress constituted waiver by conduct). Moreover, we have stated that "a defendant is not procedurally barred from raising a constitutional speedy trial claim at any time up to the point of trial, [although] a defendant's failure to assert his claim in a timely manner can be weighed heavily

against him as part of the *Barker* analysis." *Disharoon v. State*, 288 Ga. App. 1, 4 (1) (c) (652 SE2d 902) (2007) (citation and punctuation omitted). The State's arguments do not present a compelling reason to preclude Wood from asserting his constitutional speedy trial claim.

The State first argues that, because Wood had the right to be present at all critical stages of a criminal prosecution, he had an obligation to appear in court before the court could consider his motion to dismiss. *See Fair v. State*, 288 Ga. 244, 260 (3) (702 SE2d 420) (2010) (providing that under both the Georgia and the federal constitutions, a criminal defendant has the "right to be present at all critical stages of his trial.") (citation omitted). "However, the right to be present belongs to the defendant, and he is free to relinquish it if he so chooses." *Hampton v. State*, 282 Ga. 490, 492 (2) (a) (651 SE2d 698) (2007); *see also Pennie v. State*, 271 Ga. 419, 421 (2) (520 SE2d 448) (1999) ("[A] defendant may personally waive his right to be present at a stage in the trial, or counsel may waive this right for the defendant."). The State points to no legal authority providing that it can require a defendant's attendance at a hearing.

The State further argues that under *In re Kashamu*, 769 F.3d 490, 494 (7th Cir. 2014), Wood waived his right to assert his speedy trial rights by making himself

unavailable to the court system after becoming aware of the criminal charges. Here, the trial court concluded that Wood had no knowledge of the pending criminal charges until 2013, and there is no evidence in the record to the contrary. The State argues that this factual determination was wrong, and it relies on OCGA § 17-7-90 and *Chiasson v. State*, 250 Ga. App. 63 (549 SE2d 503) (2001), for support of the premise that Wood had notice of the criminal charges when the State mailed the notice of the first arraignment to his Georgia address in January 2009. But OCGA § 17-7-90 governs the issuance and execution of bench warrants, and *Chiasson* held only that a bench warrant sent to the defendant's last known address and returned undeliverable met the requirements of the statute. 250 Ga. App. at 65 (5). Contrary to the State's reading of the case, *Chiasson* does not hold that a defendant has notice of the arraignment when it is sent to an address at which he no longer resides.

Here, Wood left Georgia for New Hampshire in 2006 and left the United States in 2007. There were no charges pending at the time of his departure, so Wood was under no obligation to apprise the court of a change of address. Thus, the 2009 notice sent to a prior address is not proof that Wood had notice of the indictment, and the remaining evidence supports the trial court's conclusion that Wood was first apprised of the pending charges in 2013.

9

We are thus faced with the State's assertion that Wood gave up his constitutional speedy trial rights based on language in *Kashamu* that "[o]nce [a defendant is] warned [of criminal charges], it's his choice whether to face the judicial music in the United States or forgo any speedy trial right based on time he spends out of the reach of our court system." 769 F.3d at 494. We do not read *Kashamu* as setting forth a new principle under the *Barker* framework that we are required to follow that a defendant always gives up his right to assert a speedy trial claim if he is out of the reach of the country. First, *Kashamu* is only persuasive, and not binding, authority. *See Gresham v. Harris*, 329 Ga. App. 465, 467 (765 SE2d 400) (2014) ("[W]e are not bound by decisions of other states or federal courts except the United States Supreme Court."). Second, the persuasiveness of the language in *Kashamu* that the State relies upon to support the proposition that Wood gave up his speedy trial right is diminished because it is *dicta.* Before making this statement, the Seventh Circuit Court of Appeals had already concluded that the defendant had no rights under the U. S. Constitution because he was living abroad and was not a U.S. citizen. *Kashamu*, 769 F.3d at 492. But even if the relied-upon statements were central to the Seventh Circuit's holding, the statements did not establish a new rule of law under the *Barker* framework. Rather, in reading the statements in context, they support the

10

Seventh Circuit's conclusion that the defendant was not entitled to mandamus relief because his speedy trial rights were not violated. The statements in question merely emphasize the fact that the more the defendant's actions contributes to the pre-trial delay, and thus the more the second *Barker* factor would be weighed against him, the more difficult it will be for him to prove that he was denied his right to a speedy trial. Thus, we decline to follow the State's suggestion to conclude that Wood was precluded from even asserting a constitutional right on the basis of being out of the reach of the court system.

The State's other arguments to the effect that Wood could not assert his speedy trial rights are similarly flawed or have been waived. The State argues that because it could have elected not to indict Wood until he was arrested, as the statute of limitations period would have been tolled for any period in which Wood was out of the state, it should not be prohibited from trying him now simply because it did indict him. But regardless of whether the State could have waited, it did not. The State cannot rewrite the record now, and nor can it avoid its constitutional duty to give Wood a speedy trial.

The State lastly argues that Wood is precluded from asserting this right under the fugitive disentitlement doctrine. The State, however, did not raise this argument

11

below, and we will not consider it on appeal in the first instance. *See Crawford v. State*, 267 Ga. 543, 545 (6) (480 SE2d 573) (1997); *Holland v. State*, 232 Ga. App. 284, 285 (2) (501 SE2d 829) (1998).

3. The State also argues that the trial court abused its discretion in considering Wood's constitutional speedy trial motion because a standing court order provided that the failure to attend a hearing on a motion shall constitute a waiver of that motion. In full, that provision of the standing order states: "Defendants and counsel who do not have motions to be argued on the date set for motions shall not be required to attend. A failure to attend without notice of conflict or permission of the Court shall constitute a waiver of motions, including any motions that are pending on the date of the motions hearing."

"A trial court has broad discretion in determining whether its orders have been complied with and its determination will not be overturned on appeal in the absence of an abuse of discretion." *Hamilton v. Hamilton*, 292 Ga. 81, 82 (1) (734 SE2d 355) (2012). At the hearing on Wood's motion, the State generally raised this argument, although it did not specifically point the court's attention to its standing order, and concurrently made its arguments regarding waiver and joinder. The court rejected all of the State's procedural arguments, based, in part, on the fact that Wood is subject

12

to a travel ban. Given that Wood's counsel appeared on his behalf to argue the motion, we find no abuse of discretion in the trial court's rejection of the State's argument.

4. In its final enumeration of error, the State argues that the trial court erred in failing to assign any weight to the trial delay caused by Wood's own actions. The State argues that the trial court erred by concluding that there was no evidence that the State was seeking to extradite Wood, and erred in failing to recognize that delays in extraditing Wood were the result of Wood's challenge to those proceedings and due to federal, not state, actions.[3]

During the hearing, both parties operated on a mistaken assumption that the clerk's file contained all of the necessary records regarding the pending extradition proceedings. The trial court took judicial notice of the clerk's entire file. The trial court realized some time later that the file did not contain such records, and concluded therefore that there was no evidence of any extradition proceedings. Accordingly, the trial court also concluded that the State had provided no evidence

---

[3] The State also argues the trial court erred in ignoring evidence that Wood left the country because he feared the possibility of being criminally charged for his actions. But we need not reach this argument because of our holding here.

13

supporting its argument regarding the delay since the 2013 indictment, and weighed that time period against the State.

The trial court erred when it concluded that there was no evidence of efforts to extradite Wood without considering the representations made by Wood, through counsel. In his motion to dismiss on speedy trial grounds, Wood specifically acknowledged that the United States government executed an extradition request to Finland. It has been recognized that a defendant in a criminal proceeding may make judicial admissions in his pleadings, motions, and briefs, and that such admissions bind the defendant. *Bannister v. State*, 202 Ga. App. 762, 766 (1) (b) (415 SE2d 912) (1992); *see also Froelich v. State*, 210 Ga. App. 647, 648 at n. 1 (437 SE2d 358) (1993). Wood's admission that the federal government filed an extradition request is binding on him for purposes of resolving his motion to dismiss. *Id.*[4]

---

[4] In addition to the statements in the motion to dismiss, defense counsel made further statements showing that the government had initiated an extradition request. Specifically, Wood's counsel acknowledged that the State "put in their extradition request [in] September of 2013." Wood's counsel also acknowledged that the extradition request included "extensive affidavits[,]" and that the second extradition request attached the new indictment and other materials, and that "[a]ll of that was part of their application for extradition." Wood's counsel argued that the first indictment "would not have rendered [Wood] extraditable. But the second one did." Wood's counsel went on to argue that although she could not compel the presence of Wood's extradition attorney, Wood "was litigating in Finland against that extradition when the new indictment came down, and that significantly changed the extradition

Given the trial court's factual error in concluding that there was no evidence that the government sought to extradite Wood, we must vacate and remand. When a trial court considering a constitutional speedy trial claim clearly errs in a material factual finding, the court's exercise of discretion in applying the *Barker* balancing test "can be affirmed only if the appellate court can conclude that, had the trial court used the correct facts and legal analysis, it would have no discretion to reach a different judgment." *State v. Pickett*, 288 Ga. 674, 679 (2) (d) (706 SE2d 561) (2011). The trial court weighed the reason for the delay after the re-indictment because it mistakenly

concern over there." "Generally, a statement by defense counsel made in the presence of the defendant relating to the defendant's conduct is considered a statement by the defendant himself if the defendant does not repudiate counsel's authority to make the statement." *Flading v. State*, 327 Ga. App. 346, 350 (1) (759 SE2d 67) (2014) (ciation omitted). And an admission by a defense attorney is admissible where it is shown that the statement was authorized by the defendant. *See Johnson v. State*, 231 Ga. App. 823, 824 (2) (499 SE2d 145) (1998). The trial court did not analyze whether counsel's statement could be considered as a statement by Wood himself, and we cannot make a determination in the first instance. *See State v. Holler*, 224 Ga. App. 66, 69 (1) (479 SE2d 780) (1996) (admission of evidence is within the discretion of the trial court). We note that under OCGA § 24-8-801(d)(2)(D), a party may use a statement by the opponent party's agent as an admission by the opponent, and federal case law, which is relevant in interpreting the new Evidence Code, has held that the federal counterpart to this statute allows statements by an attorney to be admissible against a defendant in criminal cases. *See United States v. Harris*, 914 F.2d 927, 931 (7th Cir. 1990); *United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir. 1981).

15

believed there was no evidence that any effort had been made to extradite Wood. Had the trial court correctly considered the evidence before it, it is possible that it would have weighed the second *Barker* factor differently. Accordingly, we vacate and remand for the trial court to reconsider the evidence and conduct a new *Barker* analysis. On remand, the trial court may also consider whether counsel's statements at the hearing are admissible and binding on Wood. Alternatively, it may also permit the parties to supplement the record with other evidence regarding the extradition proceedings that no party actually disputes have occurred, including evidence that both parties had mistakenly assumed was in the clerk's file.

*Judgment vacated and remanded with direction. Phipps, P. J., and Dillard, J., concur.*

## ON MOTION FOR RECONSIDERATION

On motion for reconsideration, Wood argues that defense counsel's statements during argument at the motion hearing could not have been used against him and, as a result, a remand is unnecessary. Wood ignores the fact that we are vacating the trial court's order because, when it concluded that there was "no evidence that the State is seeking to extradite [Wood]," it overlooked his admission made in his motion to dismiss that an extradition request had been filed. In his motion for reconsideration, Wood makes no argument challenging our conclusion that his statement in his motion was binding on him. Therefore, contrary to Wood's argument, the trial court did not consider all the relevant evidence.

Wood also argues that we erred in stating that the evidence of the extradition proceedings was inadvertently omitted, and suggests that the State deliberately withheld that information for strategic reasons. This argument is not supported by the record.

*Motion for reconsideration denied.*